(47)

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

FILED

JUL 17 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                              )
                                    )
                                    )   Case No. 05-21390-B-7
ESTRELLA A. KINCAID and             )
JAMES M. KINCAID,                   )
                                    )
                Debtors.            )   D.C. No. EK
                                    )
                                    )
_____)

MEMORANDUM DECISION

    This is the debtors' motion to reconsider an order "dated and
signed by Judge Holman on April 6, 2006." The court signed two
orders on April, 6, 2006. Given the title of the instant motion,
the court determines that the debtors seek reconsideration of the
order located at Docket No. 485 which was entered on the docket on
April 7, 2006 (the "April 7, 2006 Disqualification Order"), denying
a motion to disqualify this judge and for other relief. The motion
that led to the April 7, 2006 Disqualification Order bore a Docket
Control Number of JPG-1, but that Docket Control Number was an
improper use of number assigned by a another party in a prior
matter.

    At the hearing on this matter and the companion matter, debtor
Estrella Kincaid made a motion to continue this hearing. For the
reasons stated on the record, that motion is denied. For the
reasons explained in this Memorandum Decision, the instant motion

- 1 -

520

1  to reconsider is also denied.

2      This matter came on for hearing on June 20, 2006, at 9:30 a.m.

3  Appearances are noted on the record.  This is a core proceeding and

4  the Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and

5  157.  The following constitutes the Court's findings of fact and

6  conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1]

7      Neither the respondent within the time for opposition nor the

8  movant within the time for reply filed a separate statement

9  identifying each disputed material factual issue relating to the

10  motion.  Accordingly, both movant and respondent consented to the

11  resolution of the motion and all disputed material factual issues

12  pursuant to FRCivP 43(e).  LBR 9014-1(f)(1)(ii) and (iii).

13

14                    **FACTUAL BACKGROUND**

15      In order to address this motion properly, the court provides

16  the following factual background.  The court takes judicial notice

17  pursuant to Federal Rule of Evidence 201(c) of the facts stated in

18  this factual background.  This is the third bankruptcy case filed

19  by both James and Estrella Kincaid (the "Kincaids").  Additionally,

20  Estrella Kincaid alone filed a fourth bankruptcy case while this

21  third case was pending.

22

23  The First Bankruptcy Case, No. 00-31871:

24      Bankruptcy Case 00-31871 was filed October 26, 2000, as a

25  _____

26      [1] Unless otherwise noted, all statutory references are to the
    Bankruptcy Code, 11 U.S.C. §101 *et seq.*, and all "Rule" references are
27  to the Federal Rules of Bankruptcy Procedure.

28                              - 2 -

skeleton chapter 13 case.  The case was randomly assigned to
Department B (Judge McKeag).  In late December, 2000, the case was
transferred to Department A (Judge McManus).  The case transfer
occurred as a result of the retirement of The Honorable David E.
Russell, Judge McManus' transfer to Sacramento Department A (Judge
Russell's former department) from Modesto and a general re-
distribution of cases among the Sacramento departments of the
bankruptcy court that occurred because of the foregoing events.

The Kincaids filed this first case *in propria persona*.  With
the petition, the Kincaids filed Schedule A and a list of the 20
largest unsecured creditors.  The Kincaids also received approval
to pay the filing fee in installments.

The master address list was filed October 31, 2000.  On
December 5, 2000, the chapter 13 trustee, Jan Johnson, filed a
motion to dismiss for failure to file a chapter 13 plan, the
Summary of Schedules, Schedules B-J and the Statement of Financial
Affairs.  At a hearing held January 31, 2001, the Kincaids were
given ten (10) days to file the missing documents.  The order after
hearing entered on February 16, 2001, extended that deadline to
February 22, 2001.  The required documents were not filed and this
first case was dismissed by order entered March 5, 2001.

The court notes that creditor Red Shield Servicing, Inc.,
servicing agent for the loans secured by two deeds of trust on the
Kincaids' residence, filed a motion for relief from the automatic
stay on January 9, 2001.  The case was dismissed before a final
hearing could be held on the motion.  The motion was denied as moot
on March 8, 2001.  The court also notes that the Kincaids did not

- 3 -

file any adversary proceedings during the pendency of bankruptcy case 00-31871.

The Second Bankruptcy Case, No. 01-22358:

This second bankruptcy case was filed March 5, 2001; the date that the clerk entered the order dismissing the first bankruptcy case. This case was filed under chapter 7 and was randomly assigned to Department C (Judge Klein). Again, the Kincaids filed a skeleton petition *in propria persona*. The Kincaids did file the master address list with the petition. The Kincaids again received approval to pay the filing fee in installments. All installments were paid by July 26, 2001.

On March 20, 2001, the Kincaids filed an application to convert the case to one under chapter 13. The conversion was granted by the clerk pursuant to authority delegated under Special Order 93-1 and the case was reassigned to Department A (Judge McManus). Reassignment from Department C to Department A was necessary because at the time of conversion, Judge McManus was responsible for all Sacramento chapter 13 cases. Jan Johnson was appointed as chapter 13 trustee for this second case.

Creditor Red Shield Servicing, Inc., filed a motion for relief from the automatic stay to foreclose on the Kincaids' residence on March 29, 2001. The motion was denied on May 1, 2001 for lack of cause. On May 1, 2001 the chapter 13 trustee, filed a motion to re-convert the case to chapter 7. The trustee withdrew the motion on May 8, 2001 because on May 2, 2001, the Kincaids had filed a chapter 13 plan, their Schedules and the Statement of Financial

- 4 -

Affairs.   The 341 meeting was held and concluded on May 3, 2001.
The plan was confirmed by order entered June 1, 2001.   The
confirmation order was "amended" on November 1, 2001.

Red Shield filed a second motion for relief from automatic
stay on August 15, 2001.   That motion was denied without prejudice
on September 4, 2001.   The main case contains no docket entries
from November 2, 2001 to March 24, 2003.   During that time, all
activity was occurring in two adversary proceedings, which are
detailed below.

On March 24, 2003, a third motion for relief from the
automatic stay was filed with respect to the Kincaids' residence.
This time, the individual creditors on the two notes secured by the
Kincaids' residence (the "Mortgage Creditors"), as opposed to Red
Shield Servicing, filed the motion.   Judge McManus granted this
third motion in part at a hearing held April 30, 2003.   On May 27,
2003, Judge McManus ordered adequate protection - that the Kincaids
must confirm a modified plan within 90 days that complied with
1325(a)(5)(B) or the Mortgage Creditors would receive relief from
the automatic stay by subsequent order.   On June 6, 2003, the
Kincaids appealed (the "First Appeal") the adequate protection
order to the Bankruptcy Appellate Panel ("BAP").   The Kincaids did
not seek a stay pending appeal from the bankruptcy court when the
First Appeal was filed.   On August 28, 2003, the BAP itself granted
a temporary stay on reconsideration of an alleged earlier order
denying a stay.   On September 12, 2003, the BAP denied a separate
motion for stay pending appeal because no request had been first
made in the bankruptcy court.   The Kincaids had filed a modified

- 5 -

chapter 13 plan and a motion to extend the time to confirm said
plan on August 26, 2003, but both of those motions were withdrawn
on August 29, 2003 after the BAP issued its temporary stay.

On September 12, 2003, debtor Estrella Kincaid filed her first
"Urgent Emergency Request." In it, she sought either (1) an
injunction against further violations of the automatic stay or (2)
a stay pending appeal. Without first obtaining an order granting
relief from the automatic stay based on default under the May 27,
2003 adequate protection order, the Mortgage Creditors had
published a notice of sale of the Kincaids' residence. On
September 17, 2003, Judge McManus issued an order setting an
October 15, 2003 hearing to consider sanctions for violations of
the automatic stay and to reconsider whether to grant relief from
the stay. Judge McManus took the matter under advisement on
October 15, 2003.

On October 24, 2004, the BAP issued an order in the First
Appeal that (1) granted leave to appeal the interlocutory adequate
protection order, (2) extended the temporary stay first established
in the BAP's August 28, 2004 order, and granted a limited remand
for Judge McManus to issue an order after the October 15, 2003
hearing. Judge McManus issued his ruling on December 29, 2003 in
which he ruled: (1) the Mortgage Creditors had violated the
automatic stay by scheduling and publishing notice of their
foreclosure sale and by failing to rescind for 22 days; (2) the
Mortgage Creditors did not violate the BAP's stay because they had
not yet received it; (3) the automatic stay was not terminated at
the time of the ruling; (4) the Mortgage Creditors were sanctioned

- 6 -

$500 for their violation of the automatic stay (no greater damages having been established); and (5) the sanctions order was stayed until sanctions motions against the Kincaids in the related adversary proceedings were decided.  On January 26, 2004, the BAP dismissed the First Appeal for reasons not disclosed in the order.

The docket is silent from March 15, 2004 to Sept. 15, 2004.  On the latter date, the trustee moved to dismiss this bankruptcy case in part because Judge McManus had dismissed with prejudice the Kincaids' complaint against the Mortgage Creditors. (see discussion below).  Judge McManus granted the motion at a hearing on October 5, 2004.  He issued a memorandum opinion and order (the "Case 01-22358 Dismissal Order") on October 8, 2004.  The order also dissolved the stay of the $500 sanctions order.

Also on October 8, 2004, the Kincaids filed a motion to reconsider the Case 01-22358 Dismissal Order.  Judge McManus set the motion for a hearing on October 18, 2004.  After that hearing, Judge McManus issued a memorandum decision denying the motion for reconsideration.  An order to that effect was entered October 19, 2004.  On November 18, 2004, this second bankruptcy case was reassigned to Department B (Judge McKeag) as part of an internal restructuring of the Sacramento Division caseload to spread the chapter 13 cases between Departments A and B.

On October 28, 2004, the Kincaids appealed the Case 01-22358 Dismissal Order to the BAP (the "Second Appeal").  No request for a stay pending appeal was made at that time.  On October 29, 2004, the BAP denied a motion for reconsideration of the Kincaids' request for a writ of mandamus (the original request itself does

not appear on the bankruptcy court's docket).  On November 16, 2004, the BAP denied a second motion for reconsideration.  On December 8, 2004, the BAP denied an "amended" petition for a writ of mandamus.  The BAP ordered the Kincaids not to submit any further requests for mandamus relief.  On December 28, 2004, the BAP issued an order that it would not consider the Kincaids' "response" to the December 8, 2004 order.  It further ordered the BAP clerk not to accept any further pleadings from the Kincaids on the mandamus issue except a notice of appeal.  On January 7, 2005, the BAP issued a certificate of record as a result of the Kincaids' appeal to the Ninth Circuit Court of Appeals of the denial of a writ of mandamus.  On January 11, 2005 the BAP denied the Kincaids' motion to stay pending appeal the BAP's order denying the writ of mandamus.

On February 3, 2005, the Kincaids filed a motion for a preliminary injunction.  That motion was filed in the bankruptcy court, but it was clearly directed to the BAP as it sought reconsideration of the BAP's January 11, 2005 order.  That motion was not calendared by the clerk of the bankruptcy court because the Kincaids failed to file a notice of hearing.  The clerk mailed the Kincaids a memorandum to that effect and placed a copy in the court file.  The BAP, having received the same motion, denied it on February 7, 2005, ruling that the Kincaids had no likelihood of success on the merits in the 9th Circuit as the only order on appeal was the denial of a writ of mandamus.

On March 29, 2005, the BAP dismissed the Second Appeal for failure to prosecute.  No notice of appeal of the March 29, 2005

order appears in the bankruptcy court's file.  However, subsequent

events show that it was in fact further appealed to the 9th

Circuit.  On March 29, 2006, in two unpublished decisions, the 9th

Circuit affirmed the dismissal by the BAP of the Second Appeal and

the BAP's denial of a writ of mandamus.  The court's file contains

no information as to whether the Kincaids' attempted to obtain

further review of these two 9th Circuit decisions.

On May 19, 2005, the trustee issued his final report and

account giving notice that objections must be filed within thirty

days.  The Kincaids timely objected to the trustee's final report

on June 20, 2005.  Between the time the objection was filed and the

July 12, 2005 hearing, this bankruptcy case was again reassigned to

Judge Holman.  This reassignment occurred because of the retirement

of Judge McKeag and Judge Holman's transfer to Sacramento

Department B from Modesto.  The Kincaids' objection to the

trustee's final report was overruled on July 12, 2005.  The

Kincaids expressed no objection to the contents of the report.

They had objected to the closing of the case arguing that it would

moot their then-pending Second Appeal.

On August 18, 2005, the trustee filed a second final report

and account.  The Kincaids filed an objection to this second report

on September 19, 2005.  As with the first objection, the Kincaids

objected that the dismissal of this case would adversely affect the

Second Appeal.  They also objected based on a motion filed in their

third bankruptcy case.  The hearing on the objection to the

trustee's second final report and account was continued twice to

allow the court to resolve motions to disqualify Judge Holman filed

- 9 -

1  in the Kincaids' two subsequent cases.  On December 20, 2005, Judge

2  Holman overruled the objection to the trustee's second final report

3  and account, but retained jurisdiction to the extent necessary to

4  allow the Kincaids' appeals before the Ninth Circuit Court of

5  Appeals to proceed to conclusion.  An order to that effect entered

6  December 22, 2005.  On January 3, 2006, the Kincaids filed a motion

7  to reconsider the December 22, 2005 order arguing as they do in

8  this instant motion, a general violation of their due process

9  rights.  The matter was not set for hearing because the Kincaids

10  failed to file a notice of hearing.  The clerk issued a memorandum

11  to that effect and placed a copy in the file on January 4, 2006.

12  On January 10, 2006, the court approved the final report by order.

13  On January 11, 2006, the bankruptcy case was closed.  Belatedly, on

14  January 25, 2006, the Kincaids attempted to notice their motion to

15  reconsider for a January 31, 2006 hearing.  The matter was not

16  calendared because the case had closed.  The clerk issued a

17  memorandum to that effect and placed a copy in the file on January

18  26, 2006.

19

20  Adversary Proceeding 01-2192:

21       On April 30, 2001, in the second bankruptcy case, the Kincaids

22  filed an adversary proceeding (01-2192) against the Mortgage

23  Creditors.  The complaint contained five causes of action: (1)

24  captioned "Economic Duress/Undue Influence," but including

25  allegations of improper loan fees, usurious interest, and bad

26  faith; (2) "Fraud/Detrimental Reliance," but including allegations

27  of improper foreclosure; (3) "Breach of the Implied Covenant of

28

- 10 -

Good Faith and Fair Dealings (sic)," including allegations that the Mortgage Creditors breached a contract to refinance and instead instituted foreclosure proceedings; (4) "Breach of Contract," including allegations of the Mortgage Creditors' refusal to refinance the loans pursuant to their contract; and (5) "Punitive Damages, Damages for Emotional Distress," seeking damages for defendants' "fraudulent conduct and outrageous disregard for the Kincaids' desperate need for funds." The damages sought were $1 Million total. It sought a setoff against the amount of the Mortgage Creditors' loans and a money judgment for any balance.

    A limited number of the defendants answered on May 24, 2001. Judge McManus issued a scheduling order on September 10, 2001. The order included deadlines to and including a pre-trial conference set for January 30, 2002. On November 14, 2001, the court rescheduled the pre-trial conference to February 13, 2002. The file reflects that the Kincaids propounded interrogatories and requests for admission to defendants on or about January 4, 2002. Pursuant to the terms of the scheduling order, discovery had closed December 7, 2001. By separate order entered January 2, 2002, the court ordered the Kincaids to file a pre-trial statement by January 21, 2002. The court ordered the Mortgage Creditors to file their pre-trial statement by January 28, 2002. At the pre-trial conference held February 13, 2002, Judge McManus set the matter for trial on April 10, 2002 and April 11, 2002. The court ordered the Kincaids to lodge their exhibits with the court within 14 days. They did so on February 27, 2002.

    On March 5, 2002, the Kincaids filed an application to

postpone the trial because Mrs. Kincaid claimed to have injured herself in a fall. Judge McManus issued a detailed pre-trial order on March 21, 2002 in which he continued the trial to May 29 and 31, 2002. On April 12, 2002, the Kincaids filed a motion for a further continuance of the trial and a belated objection to the pre-trial order. After a hearing on April 23, 2002, Judge McManus issued an amended pre-trial order continuing the trial to August 1 and 2, 2002 before Judge Whitney Rimel. Judge Rimel was assigned to preside over the trial due to a scheduling conflict for Judge McManus in July and August, 2002. Judge Rimel was also to handle any subsequent motions.

On May 28, 2002, the Kincaids filed a motion for leave to file a motion for summary judgment. The motion was denied by Judge Rimel on June 24, 2002. The order did allow the Kincaids to file a motion seeking corrections to the pre-trial order's statement of undisputed facts. Also on June 24, 2002, the adversary was returned to Judge McManus because his scheduling conflict had been resolved. Judge McManus required that any requests for changes to the pre-trial order be filed by June 28, 2002.

The Kincaids filed their requests timely. At a hearing on July 3, 2002, it became apparent that the scope of the changes would require an amended complaint. The Kincaids were ordered to file a motion to amend the complaint on or before July 12, 2002. The Kincaids filed their motion three days late on July 15, 2002. The motion was opposed, but it was ultimately granted in an order entered July 26, 2002.

The Kincaids filed their first amended complaint on July 26,

- 12 -

2002.  The amended complaint stated additional claims for
Fraudulent Inducement, misrepresentation, negligence, breach of
fiduciary duty, "fraudulent conspiracy," and "Beneficiaries bound
by agent's wrongdoing."  The amount of monetary damages sought was
the same but the Kincaids added a request for injunctive relief,
"suspending Kincaids' obligations under the notes until complaint
resolved," in the prayer.  Some defendants answered the complaint
on August 2, 2002.  A status conference was set for September 25,
2002.

On August 5, 2002, the Kincaids requested permission to serve
by publication.  The request was denied on August 21, 2002.
Additional defendants answered on August 26, 2002.  The September
25, 2002 status conference was continued to October 30, 2002.  On
October 9, 2002, the Kincaids filed proofs of service for what
appears to be most of the remaining defendants.  On October 22,
2002, the newly answering defendants filed a motion for a more
definite statement and sought dismissal pursuant to Fed. R. Bankr.
P. 7012 incorporating Fed. R. Civ. P. 12(b)(6).  On November 15,
2002, the Kincaids filed opposition along with a counter-motion to
file a second amended complaint.  On November 19, 2002, Judge
McManus granted the 12(b)(6) motion in part and gave the Kincaids
15 days to file a further amended complaint.

On December 2, 2002, the Kincaids filed an *ex parte* request to
extend that deadline to January 11, 2003 and to continue the status
conference to February 26, 2003, alleging that Mrs. Kincaid was
medically unable to comply with the earlier deadlines.  On December
12, 2002, Judge McManus ordered the status conference continued to

- 13 -

February 26, 2003.  On December 19, 2002, Judge McManus issued a
memorandum decision and order extending the deadline for the
Kincaids to file and serve the second amended complaint to December
31, 2002.

The Kincaids filed their second amended complaint on January
9, 2003.  The second amended complaint was served January 10, 2003
on some defendants, and on January 22, 2003 on others.  It added a
claim for "constructive fraud" and for the first time included
specific allegations against the individual investor defendants.
On January 21, 2003, defendants filed a motion to strike the second
amended complaint as untimely.  The Kincaids opposed.  Judge
McManus took the matter under submission on March 3, 2003 and
issued a memorandum decision and order on March 4, 2003 dismissing
the second amended complaint pursuant to Fed. R. Civ. P. 41(b) for
failure to comply with an order of the court and alternately under
Fed. R. Civ. P. 16(f) for failure to comply with the court's pre-
trial order.  After this ruling, the first amended complaint was
the operative complaint.

On March 17, 2003, the Kincaids filed a motion to reconsider
the order striking the second amended complaint.  The motion was
opposed, and it was ultimately denied at a hearing held on April
30, 2003.  An order to that effect entered May 13, 2003.  On May 9,
2003, Judge McManus issued an amended scheduling order setting,
inter alia, a pre-trial conference for Nov. 19, 2003.  On May 23,
2003, defendant James Fisher filed a motion for judgment on the
pleadings as to him.  The motion was opposed, and it was ultimately
granted by Judge McManus on August 19, 2003.  On June 19, 2003, the

- 14 -

Kincaids filed a notice of voluntary dismissal.  The notice was
ineffective because answers had been filed.  See Fed. R. Bankr. P.
7041 incorporating Fed. R. Civ. P. 41(a).

On October 1, 2003, defendants AMCAP, Inc., and Reb Bieber
filed a motion to compel the Kincaids' responses to discovery and
for sanctions.  The motion to compel was granted on October 20,
2003.  The court reserved ruling on the request for sanctions.  On
October 24, 2003, the remaining answering defendants filed their
own motion to compel.  The Kincaids filed opposition to the motion
the morning of the hearing on Nov. 10, 2003.  The motion was
granted in part by Judge Mcmanus.

On February 23, 2004, Judge McManus dismissed this adversary
proceeding (No. 01-2192) without prejudice because a duplicate
adversary proceeding (No. 03-2260) had been filed by the Kincaids
shortly after their motion to reconsider dismissal of the second
amended complaint was denied.

Adversary Proceeding 03-2260:

On May 6, 2003, after denial of their motion to reconsider
dismissal of the second amended complaint was denied, but well
before AP 01-2192 was dismissed in total, the Kincaids filed
adversary proceeding 03-2260.  The defendants in this adversary
proceeding were identical to the second amended complaint dismissed
in AP 01-2192.  On June 4, 2003, prior to the filing of any answer,
the Kincaids filed their first amended complaint (and fifth
complaint overall).  On June 12, 2003, defendants moved to dismiss
the first amended complaint under Federal Rules of Civil Procedure

- 15 -

41(b) and 12(b)(6).  The motion was "joined" by essentially all

defendants.  It was also opposed by the Kincaids.  In a decision

dated August 19, 2003, Judge McManus denied the motion because,

while the 1st amended complaint in this case is essentially

identical to the 2nd amended complaint dismissed in 01-2192, that

dismissal was without prejudice and was based on untimeliness under

the court's orders in AP 01-2192. No such orders restricted the

filing of the first amended complaint in this new adversary

proceeding.

On August 29, 2003, the investor defendants filed a motion

under Federal Rules of Civil Procedure 12(b)(6) and 12(e).  The

motion was granted in part on September 29, 2003 and the Negligence

cause of action was dismissed without leave to amend.  The

remaining claims were allowed to proceed.  On September 12, 2003,

certain defendants filed a motion to exclude documents and for

sanctions for failure of the Kincaids to comply with discovery

orders.  The order was granted in part.  The Kincaids were

compelled to appear at depositions to be held in Judge McManus'

courtroom at specified dates and times.  The remainder of the

sanctions request was reserved.

After denial of the Rule 12 motions, answers were filed on

October 10, 14, and 15, 2003.  On January 16, 2004, Judge McManus

issued an order setting a status conference on Feb. 4, 2004.  At

that status conference, Judge McManus established several deadlines

with an order to follow.  The order issued on February 23, 2004.

The Kincaids filed a motion to reconsider the scheduling order on

February 4, 2004; almost immediately after the hearing concluded.

The February 23, 2004 scheduling order established deadlines up through a pre-trial conference set on May 27, 2004.  Pre-trial statements were due five court days before the hearing.  On May 11, 2004, the Kincaids filed a motion seeking fact finding on discrepancies between sets of admissions from different defendants. On May 13, 2004, the Kincaids filed a motion to compel answers to interrogatories.  On May 19, 2004, the Kincaids filed a motion similar to the May 11 motion.  On May 20, 2004, Judge McManus issued an order that the Kincaids' motions be heard on May 27, 2004, the date of the pre-trial conference.  The motion to compel response to interrogatories was granted in part.  The remaining motions were denied.

The pre-trial conference was continued to June 2, 2004.  The Kincaids attempted to amend their pre-trial statement the morning of June 1, 2004.  Judge McManus struck the amended pre-trial statement and a notice of errata also filed by debtors on June 1, 2004, from the record.  The pre-trial conference was continued to June 4, 2004.  On June 3, 2004 the Kincaids filed two documents detailing additional disputed and undisputed facts.  On June 4, 2004, defendants' counsel filed an objection to those two and all such pleadings where Estrella Kincaid purported to act as attorney for her husband.  At the hearing on June 4, 2005, Judge McManus dismissed this adversary proceeding with prejudice.  Judge McManus issued an extensive memorandum decision and an order dismissing the adversary proceeding (the "AP 03-2260 Dismissal Order") on September 7, 2004.

On September 15, 2004, the Kincaids appealed the AP 03-2260

- 17 -

Dismissal Order to the BAP (the "Third Appeal."). On November 18, 2004, this adversary proceeding was reassigned to Judge Jane McKeag as part of an internal restructuring of the Sacramento Division. On November 5, 2004, the BAP denied the Kincaids' request to stay of the Third Appeal while they worked on the Second Appeal. The Kincaids were ordered to complete the record on this appeal. On December 8, 2004, the BAP denied the Kincaids' motion for reconsideration of the November 5, 2004 order and dismissed the appeal for failure to prefect the record. No notice of appeal of the December 8, 2004 order appears in the bankruptcy court's file. However, subsequent events show that it was in fact further appealed to the 9th Circuit. On March 29, 2006, in two unpublished decisions, the 9th Circuit affirmed the dismissal by the BAP of the Third Appeal. On June 30, 2006, the bankruptcy court received from the Bankruptcy Appellate Panel a copy of the Mandate from the Ninth Circuit Court of Appeals. The Third Appeal is concluded and is not subject to further appellate review.

The Third Bankruptcy Case, No. 05-21390:

The Kincaids believe that they were "scammed" by the Mortgage Creditors. AP 01-2192 and AP 03-2260 set forth their allegations regarding that perceived "scam." While the Second Appeal was pending and after several attempts to stay the Case 01-22358 Dismissal Order in both the bankruptcy court and the BAP had failed, the Kincaids filed their third bankruptcy case (05-21390) as a skeleton chapter 13 *in propria persona* on February 10, 2005. The filing of this third joint bankruptcy case, the filing of Mrs.

Kincaid's individual fourth bankruptcy case (see below), and all
actions taken in the third and fourth bankruptcy cases, constitute
a series of efforts to undo the AP 03-2260 Dismissal Order and
retain (or as subsequent events played out, regain) ownership of
their residence.  Undoing the AP 03-2260 Dismissal Order is
critical to the Kincaids because the dismissal with prejudice of AP
03-2260, which dismissal occurred in another department and has
become final and not subject to further appellate review, leaves
them without any opportunity to vindicate their belief that they
were "scammed" by the Mortgage Creditors.

With the petition in this third bankruptcy case, the Kincaids
filed a document purporting to be a master address list but it was
rejected because debtors only listed the creditors' names without
providing addresses.  This case was assigned to Judge McKeag
because by this time the second bankruptcy case had been
transferred to her.

On February 16, 2005, the Mortgage Creditors filed a motion to
dismiss the case.  On February 25, 2005, attorney Louis Perkins
substituted into the case representing both of the Kincaids.  Also
on February 25, 2005, the Schedules, Statement of Financial
Affairs, a chapter 13 Plan, the Rights and Responsibilities, and an
amended master address list were filed.  On February 28, 2005,
debtor Estrella Kincaid filed written opposition *in propria persona*
to the motion to dismiss the third bankruptcy case.  On March 1,
2005, the date of the hearing on the motion to dismiss, Mrs.
Kincaid substituted Mr. Perkins out and placed herself back *in
propria persona*.  Judge McKeag took the dismissal motion under

1   submission after hearing held on March 1, 2005.

2       On March 14, 2005, Judge McKeag issued her memorandum decision

3   finding cause and converting this case to one under chapter 7.   An

4   order (the "Third Bankruptcy Case Conversion Order") was entered

5   the same day.  Susan Smith was appointed interim trustee.  On March

6   24, 2005, debtor James Kincaid through his attorney filed his

7   motion to reconsider the Third Bankruptcy Case Conversion Order.

8   The matter was not calendared because it was noticed for a non-

9   calendar date.  Mr. Kincaid filed an amended notice of hearing on

10  March 25, 2005.  On April 7, 2005, the Mortgage Creditors filed

11  opposition to Mr. Kincaid's motion to reconsider.

12      Also on March 24, 2005, Mrs. Kincaid filed her own motion to

13  reconsider the Third Bankruptcy Case Conversion Order.  It included

14  a request for a stay of the Third Bankruptcy Case Conversion Order

15  until the Second Appeal could be resolved.  The clerk issued a

16  memorandum that it was not calendared because it did not have a

17  notice of hearing.  On April 19, 2005, approximately one week

18  before the hearing set for Mr. Kincaid's motion, Mrs. Kincaid filed

19  a notice of hearing calendaring her matter for April 27, 2005.  The

20  morning of the hearing, Mrs. Kincaid filed an 8 page memorandum of

21  points and authorities and a 21 page "errata" replying to the

22  opposition filed to Mr. Kincaid's motion.

23      The only motion for reconsideration of the Third Bankruptcy

24  Case Conversion Order for which minutes appear on the docket is

25  that filed by Mr. Kincaid.  Mrs. Kincaid appeared on his motion as

26  well.  It was denied by order entered April 29, 2005.  On April 28,

27  2005, Mrs. Kincaid filed a motion to have her motion for

28                              - 20 -

reconsideration of the Third Bankruptcy Case Conversion Order heard on May 3, 2005. On May 2, 2005, Judge McKeag issued an order denying the request to hear the matter on May 3, 2005. On May 3, 2005, Mrs. Kincaid also filed an "Emergency Motion for Stay of Order Pending Appeal." That matter was calendared for June 1, 2006 and was denied on that date. A Minute order to that effect entered June 2, 2005. On May 10, 2005, Mrs. Kincaid appealed the denial of her motion for reconsideration of the Third Bankruptcy Case Conversion Order to the district court (the "Fourth Appeal"). On May 12, 2005, in a document written by Mrs. Kincaid, Mr. Kincaid attempted to join the appeal. On May 12, 2005, Mr. Kincaid filed a motion to stay all matters in the third bankruptcy case pending appeal of the Third Bankruptcy Case Conversion Order. The motion was filed *ex parte*. It was denied in an order entered May 16, 2005. The Fourth Appeal was dismissed by the District Court on June 15, 2006 for failure to perfect the appeal. A copy of that order appears on the bankruptcy court docket at Dkt. No. 517.

On April 29, 2005, the chapter 7 trustee filed four motions in the third bankruptcy case: (1) motion for turnover of debtors' residence; (2) motion for accounting and for turnover of personal property (post-petition rents for rooms in the residence); (3) motion to surcharge debtors' homestead exemption; and (4) motion to sell the residence. All matters were set for June 1, 2005. On May 18, 2005, each debtor filed separate oppositions to each of the four motions. Also on May 18, 2005, Mrs. Kincaid filed a motion to disqualify Judge McKeag. In it she makes allegations substantially similar to those made in her motions to disqualify Judge Holman.

Mrs. Kincaid filed a request to shorten time so that it could be heard on the June 1, 2005 calendar with the trustee's motions. The request for shortened time was denied May 23, 2005. On May 27, 2005, Mrs. Kincaid filed a motion to reconsider the denial of the May 23, 2005 order denying shortened time. The motion to reconsider was filed *ex parte* and not resolved prior to the June 1, 2005 hearing. On May 31, 2005, Mrs. Kincaid filed her second motion to disqualify Judge McKeag entitled "Urgent Request for Disqualification under 28 USC S (sic) 455(a)." The motion was filed *ex parte*. It does not appear that this *ex parte* motion was ever resolved. However, the motion is moot in light of Judge McKeag's retirement and the transfer of this case to Judge Holman.

Hearings on the four trustee motions took place on June 1, 2006. The motion for accounting and turnover of personal property was granted but no order was ever submitted. The motion for turnover of the residential real property was also granted and an order to that effect was entered on the docket July 11, 2005. On July 18, 2005, Mrs. Kincaid filed a motion to extend the deadline to file a motion to vacate the July 11, 2005 order. The matter was not set for hearing because Mrs. Kincaid failed to file a notice of hearing. The clerk issued a memorandum to that effect and placed a copy in the file. On July 20, 2005, Mrs. Kincaid filed a second motion to extend the deadline to file a motion to vacate the July 11, 2005 order. The matter was not set for hearing because Mrs. Kincaid attempted to set it on an incorrect date and time. The clerk issued a memorandum to that effect and placed a copy in the file. The surcharge and sale motions were continued to July 6,

2005.

On June 2, 2005, James Kincaid filed a document entitled "Termination of legal Representation of Attorney Louis J. Perkins" in which he purported to terminate Mr. Perkins and adopt all actions taken by his wife as his own. The document was ineffective because LBR 1001-1(c) incorporating L.R. 83-182(d) requires a noticed motion when clients will be left *in propria persona*.

On June 2, 2005, the Mortgage Creditors filed a motion for relief from automatic stay and set it for July 6, 2005. Trustee filed a non-opposition to the motion for relief from the automatic stay on June 14, 2005. Mr. Kincaid (through Mr. Perkins) filed opposition to the motion on June 21, 2005. Mrs. Kincaid filed opposition one day late on June 23, 2005. Creditors replied on June 28, 2005. The motion was denied without prejudice on July 6, 2005 for procedural defects. The trustee's continued motion to surcharge the Kincaids' homestead exemption was denied because it sought to surcharge in an unknown amount.

On June 8, 2005, trustee filed an amended motion to sell the Kincaids' residence. Mr. Kincaid (through Mr. Perkins) filed opposition to the motion on June 21, 2005. Mrs. Kincaid filed opposition one day late on June 23, 2005. On June 28, 2005, Mr. Kincaid filed a second declaration *in propria persona* opposing the sale motion. The trustee filed a supplemental declaration to the sale motion as directed on June 30. It detailed her investigation of another property owned by debtors and stated that she was not yet seeking its sale. On July 5, 2005, Mrs. Kincaid filed a 124

- 23 -

1  page opposition to the sale motion.  She filed another declaration

2  the morning of the hearing on July 6, 2005.  On July 6, 2005, the

3  motion to sell debtors' residence was granted.  An order approving

4  the sale was entered July 12, 2005 (the "July 12, 2005 Sale

5  Order").  The order permitted trustee to retain $50,000 (reduced

6  from $100,000) of debtors' homestead as a source of funds that the

7  estate could surcharge on subsequent motion and order.  Also on

8  that date, the court issued an order denying trustee's request for

9  a finding of good faith under 11 U.S.C. § 363(m).  The court did so

10  because the trustee had neither addressed the applicable legal

11  standard nor provided evidence to meet that standard.  On July 20,

12  2005, Mrs. Kincaid filed a motion to extend the deadline to file a

13  motion to vacate the July 12, 2005 Sale Order.  The matter was not

14  set for hearing because Mrs. Kincaid failed to file a notice of

15  hearing.  The clerk issued a memorandum to that effect and placed a

16  copy in the file.

17      On July 19, 2005, the trustee filed a motion to reconsider the

18  order denying the good faith finding.  The court held an initial

19  hearing on September 7, 2005.  The hearing continued to September

20  20, 2005 solely because Mrs. Kincaid stated an intention to retain

21  counsel.  The minutes reflect that the evidentiary record was

22  closed.  On Sept. 19, 2005 at 3:09 p.m. in violation of the court's

23  order closing the evidentiary record, Mrs. Kincaid filed a 6 page

24  declaration with 19 pages of exhibits.  At the September 20, 2005

25  hearing Mrs. Kincaid appeared without counsel.  The trustee's

26  motion for reconsideration was granted by order entered September

27  27, 2005.  On October 3, 2005, Mrs. Kincaid filed a motion to

28

reconsider the September 27, 2005 order. The matter was originally calendared for November 15, 2005. The court continued the matter to December 20, 2005 so that it could resolve the first three disqualification motions filed by debtor (two in this case and one in Mrs. Kincaid's subsequent chapter 13 case). On December 20, 2005, the disqualification motions were denied. Mrs. Kincaid's motion for reconsideration of the September 27, 2005 order was also denied by order entered December 23, 2005.

On December 30, 2005, Mrs. Kincaid filed a motion to reconsider the December 23, 2005 order. She set the matter on calendar for January 31, 2006. That initial hearing was continued to February 14, 2006 at Mrs. Kincaid's request so that the attorney who drafted the motion could appear and argue it. An attorney did appear for Mrs. Kincaid on that date but he argued the other matter on calendar and specifically declined to argue the motion for reconsideration. The motion was denied by order entered February 21, 2006. On February 27, 2006, Mrs Kincaid filed a motion to reconsider the February 21, 2006 order. The matter was not initially set for hearing because Mrs. Kincaid failed to file a notice of hearing. The clerk issued a memorandum to that effect and placed a copy in the file. On March 7, 2006, Mrs. Kincaid filed a notice of hearing setting the matter for hearing on April 4, 2006. The motion was denied by order entered April 7, 2006. On April 17, 2006, Mrs. Kincaid appealed the April 7, 2006 order to the District Court (the "Fifth Appeal"). That appeal remains pending.

On June 14, 2005, attorney Louis Perkins filed a motion to withdraw as counsel for James Kincaid. That motion was granted at a hearing held July 22, 2005. Mr. Perkins has not yet submitted an order after hearing. On July 5, 2005, the Kincaids received their chapter 7 discharge.

On July 7, 2005, the Kincaids filed an emergency application to reconvert to chapter 13. The Kincaids did not set the matter for hearing as necessitated by the prior conversion. Also on July 7, 2005, debtor filed another Emergency motion for stay of order pending appeal. But for some small changes it is an exact copy of the motion filed May 3, 2005. The Kincaids attempted to white out or erase the "original filed" stamp on their copy from May 3, 2005 and re-file the motion. Mrs. Kincaid tried to set the motion on five days notice on the July 12 calendar. Judge Holman issued an order setting the matter on July 15, 2005. Several creditors filed a joint opposition to the motion. The trustee also opposed. Judge Holman took the matter under submission after the hearing on July 15, 2005. A memorandum decision and order denying the motion issued on that date.

On August 4, 2005, the trustee filed a motion to approve a compromise between herself and the Mortgage Creditors. The proposed settlement called for the Mortgage Creditors to reduce the attorney's fees portion of their claim by $20,000, resulting in monies coming into the estate, in exchange for the trustee seeking to dismiss the Second Appeal and the Third Appeal. Each appeal was property of this third bankruptcy case. The matter was set for hearing on September 7, 2005. The debtors filed opposition August

- 26 -

25, 2005. On September 7, 2005, the matter continued to October 4, 2005 because trustee wanted to modify the relief sought. The court required the changes be noticed to debtors and the creditors of the estate. Trustee timely filed and served the amended motion. The matter continued again to November 1, 2005 because trustee had not yet obtained all necessary signatures on the settlement agreement. The matter continued a third time to December 20, 2005 because in the interim, the Kincaids had filed their initial disqualification motions. The court believed it should resolve those motions before reaching the merits of the motion to approve the proposed compromise. After the disqualification motions were denied on December 20, 2005, the compromise motion was granted by order entered February 6, 2006. On February 17, 2006, the court entered an amended order on the compromise to correct a clerical error. The court did so pursuant to Federal Rule of Bankruptcy Procedure 9024 incorporating Federal Rule of Civil Procedure 60(a).

Unfortunately, the amended compromise order itself was incomplete. A creditor had failed to include an exhibit to the settlement agreement that listed all of the parties to the settlement. A second motion to alter or amend the compromise order was filed February 27, 2006. The second motion was granted at a hearing held April 4, 2006. The minute order granting the motion to amend entered April 7, 2006. The second amended order itself has not yet been submitted by counsel as directed by the court's April 7, 2006 order.

On August 23, 2005, the trustee filed a motion seeking authority to (1) reimburse herself for monies expended to insure

debtors' residence pending sale by the estate; (2) use up to
$10,000 in estate funds to insure and clean up real property of the
estate located in Penryn California; and (3) abandon certain
personal property stored in the Penryn property.  The matter was
set for hearing on September 20, 2005.  The Kincaids filed
opposition September 7, 2005.  After hearing, Judge Holman granted
the motion in part and denied it in part.  The first request was
denied without prejudice for lack of evidence that trustee had
advanced the funds.  The second request was granted.  The third was
granted in part only to the specific items of personal property
listed in the motion.  An order to that effect entered September
27, 2005.  On October 6, 2005, the Kincaids filed a motion to
reconsider the September 27, 2005 order.  The motion only addressed
the second request in the trustee's original motion: permission to
use estate funds to insure and clean up the Penryn property.  The
matter was not initially set for hearing because Mrs. Kincaid
failed to file a notice of hearing.  The clerk issued a memorandum
to that effect and placed a copy in the file.  On November 23,
2005, Mrs. Kincaid filed a notice of hearing setting the matter for
hearing on December 20, 2005.  After the Kincaids' motions to
disqualify Judge Holman were denied, the motion to reconsider was
continued to January 18, 2006.  The Kincaids had raised a
potentially meritorious argument that required the submission of
evidence: i.e. if sale the Penryn property was unnecessary to
satisfy estate claims, then expenditure of monies to clean it up
would be unnecessary.  The court requested further evidence as to
the financial condition of the estate.  Trustee filed her

1   declaration on December 29, 2005.  Debtors filed further opposition

2   on January 11, 2006.  The debtors motion was denied on January 18,

3   2006 because trustee showed that sale of the Penryn property was

4   necessary to pay all administrative and other claims against the

5   estate.  An order to that effect entered January 24, 2006.

6        On February 2, 2006, Mrs. Kincaid filed a motion to reconsider

7   the January 24, 2006 order.  The only grounds claimed were that

8   Judge Holman was biased against the Kincaids and should be

9   disqualified.  As discussed in detail below, this was fourth time

10  that the Kincaids had raised this argument in this bankruptcy case.

11  The motion was denied by order entered March 14, 2006.  This order

12  was not appealed and is now final.

13       As is more fully detailed below, on July 20, 2005, Mrs.

14  Kincaid filed individually a fourth chapter 13 case.  On August 30,

15  2005, the Kincaids filed a motion to dismiss the third bankruptcy

16  case.  Their motion operated under the mistaken assumption that the

17  filing of their fourth bankruptcy case divested the bankruptcy

18  estate in the third bankruptcy case of the Kincaids' assets.  The

19  motion was denied for lack of cause by order entered September 27,

20  2005.  On October 6, 2005, the Kincaids filed a motion to

21  reconsider the September 27, 2005 order.  The matter was not

22  initially set for hearing because Mrs. Kincaid failed to file a

23  notice of hearing.  The clerk issued a memorandum to that effect

24  and placed a copy in the file.  On November 23, 2005, Mrs. Kincaid

25  filed a notice of hearing setting the matter for hearing on

26  December 20, 2005.  After the Kincaids' motions to disqualify Judge

27  Holman were denied, the motion to reconsider the September 27, 2005

28                              - 29 -

order was also denied.  The Kincaids were still operating under the erroneous belief that the filing of the fourth bankruptcy case divested the bankruptcy estate in the third bankruptcy case of the Kincaids' property.  The Kincaids still had not shown cause to dismiss.  An order to that effect entered December 23, 2005.  This order was not appealed and is now final.

On October 4, 2005, in the third bankruptcy case, the Kincaids filed their initial motion to disqualify Judge Holman.  The chronology of this and all similar motions is reproduced in detail below.  On October 18, 2005, the trustee filed her second attempt at obtaining reimbursement of monies advanced for insurance and other expenses.  The matter was set for November 15, 2006.  Due to an error in the clerk's office, the matter was not placed on Judge Holman's calendar.  On December 1, 2006, James Kincaid filed written opposition to the motion.  The trustee filed and served an amended notice of hearing on December 29, 2005 setting the matter on the court's January 18, 2006 calendar.  On January 11, 2006, the Kincaids filed a joint opposition to the motion.  The matter continued from January 18, 2006 to February 14, 2006 because the Kincaids had raised a potentially meritorious argument.  The insurance purchased by the trustee was unnecessary because the Kincaids had already insured the real properties.  Judge Holman ordered further briefing.  In the interim and on an *ex parte* basis, debtors filed their third motion to disqualify Judge Holman.  In the February 14, 2006 ruling, Judge Holman first addressed and denied the *ex parte* motion to disqualify.  He then granted the motion in part having determined that the insurance the Kincaids

claimed was on the real property was forced placed by their lenders and only covered the amount of the lenders' debt.  It in no way protected the estate's (and the Kincaids) equity interest.  Thus the expenses were reasonable and necessary to satisfy the trustee's fiduciary duty to the estate.  An order to that effect entered February 21, 2006.  This order was not appealed and is now final.

On November 4, 2005, Financial Title Company, the title and escrow company used by trustee in the sale of debtors' residence, filed a *ex parte* motion to return the balance of debtors' homestead ($100,000) that it still held.  It asserted that debtors had refused to accept payment of the funds.  It wanted to return them to the estate so that the escrow could finally close.  By order entered November 14, 2005, Judge Holman set the matter for hearing on December 20, 2005.  The trustee filed a non-opposition on November 22, 2005.  The Kincaids did not file opposition.  After the Kincaids' motions to disqualify Judge Holman were denied, the motion was granted by order entered December 23, 2005.  The funds are being held in a blocked account pending further order of the court.

On January 9, 2006, the trustee filed an application to employ Gene A. Gonzales as the estate's accountant.  In accordance with the Federal Rules of Bankruptcy Procedure and the U.S. trustee Guidelines, the application and a proposed order were served on the U.S trustee.  The U.S. trustee did not oppose the appointment and the court entered an order approving Mr. Gonzales' employment on January 23, 2006.  On January 30, 2006, the Kincaids filed a motion to vacate the January 23, 2006 order.  They argued that their due

1  process rights had been violated because they were not served with
2  the application and no hearing was held.  The motion to vacate was
3  denied by order entered March 14, 2006.  As discussed in the ruling
4  issued on March 7, 2006, the debtors rights were not violated
5  because the Federal Rules of Bankruptcy Procedure do not require
6  service of employment applications on the debtors.  Nor is there a
7  requirement that the court hold a hearing.  The request is made by
8  application and not by motion.  Bankruptcy Rules 9013 and 9014 do
9  not apply.  This order was not appealed and is now final.

10
11  On January 31, 2006, in the third bankruptcy case, the Kincaids
12  filed their third motion to disqualify Judge Holman.  The
13  chronology of this and all similar motions is reproduced in detail
14  below.  On March 7, 2006, the Kincaids filed their fourth motion to
15  disqualify Judge Holman.  The chronology of this and all similar
16  motions is reproduced in detail below.  The instant motion to
17  reconsider denial of the March 7, 2006 motion was filed April 17,
18  2006.

19      On March 17, 2006, the Kincaids' former counsel, Louis
20  Perkins, filed an application for compensation.  Counsel sought
21  attorney's fees in the amount of $21,390.64.  The application was
22  set for hearing on April 18, 2006.  On April 4, 2006, the U.S.
23  trustee filed opposition.  On April 5, 2006, one day late, the
24  Kincaids also filed opposition.  On April 14, 2006 the debtors
25  filed a "Correction to Opposition."  At a hearing held April 18,
26  2006, the debtors' opposition was overruled without prejudice.  The
27  U.S. trustee's opposition was sustained in part.  The court

28

approved fees and costs totaling $5,015.12.  The vast majority of
the fees were not compensable from the estate under the U.S.
Supreme Court's decision in <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526,
124 S.Ct. 1023 (2004).  An order approving the reduced fees entered
April 21, 2006.

On May 3, 2006, James Kincaid filed a handwritten power of
attorney designating Mrs. Kincaid as his attorney in fact.  On May
11, 2006, the clerk issued a memorandum noting that the document
purported to apply to all cases filed by the Kincaids but was only
filed in the third bankruptcy case, and to the extent that the
Kincaids wished the power of attorney to apply in other cases, a
copy must be filed in those cases.  The court notes that the power
of attorney has limited efficacy.  While it permits Mrs. Kincaid to
sign documents on behalf of her husband and to bind him to the
outcome thereof, it does not permit her to appear on behalf of her
husband in this court.  28 U.S.C. Section 1654 provides: "In all
courts of the United States the parties may plead and conduct their
own cases personally or by counsel as, by the rules of such courts,
respectively, are permitted to manage and conduct causes therein."
(West 2005).  The District Court for the Eastern District of
Calfornia has established L.R. 83-183: "Any individual who is
representing himself or herself without an attorney must appear
personally or by courtesy appearance by an attorney admitted to the
Bar of this Court and may not delegate that duty to any other
individual, including husband or wife, or any other party on the
same side appearing without an attorney."  That Local Rule is made
applicable in this court by Local bankruptcy Rule 1001-1(c).  See

also <u>C.E. Pope Equity Trust v. U.S.</u>, 818 F.2d 696, 697 (9th Cir.
1987) ("Although a non-attorney may appear *in propria persona*, in
his own behalf, that privilege is personal to him. [citation].  He
has no authority to appear as an attorney for others than
himself.") and  <u>Russell v. U.S.</u>, 308 F.2d 78, 79 (9th Cir. 1962)
("A litigant appearing *in propria persona* has no authority to
represent anyone other than himself.").  See also <u>Lewis v. Lenc-</u>
<u>Smith Mfg. Co.</u>, 784 F.2d 829 (7th Cir. 1986); <u>Georgiades v. Martin-</u>
<u>Trigona</u>, 729 F.2d 831, 834 (D.C. Cir. 1984); and <u>Herrera-Venegas v.</u>
<u>Sanchez-Rivera</u>, 681 F.2d 41, 42 (1st Cir. 1982).

<u>The Fourth Bankruptcy Case, No. 05-28841:</u>

As previously noted, debtor Estrella Kincaid filed a fourth
bankruptcy case on July 20, 2005 under chapter 13.  She did so *in
propria persona*.  The filing was a skeleton consisting of the two-
page petition and a handwritten list of creditors, without
addresses, serving as the master address list.  The case was
initially assigned to Judge Robert Bardwil but on July 26, 2006, an
order entered transferring the case to Judge Holman in Department
B.  The transfer occurred because all of Mrs. Kincaid's other cases
were pending in Department B.

On July 22, 2005, Susan Smith, the trustee in the Kincaids'
third Bankruptcy (05-21390) filed a motion seeking both to dismiss
this fourth case and alternatively for relief from the automatic
stay.  Trustee Smith alleged that the fourth bankruptcy case was
not viable because it lacked an estate to reorganize (all property
still being property of the third bankruptcy estate) and that the

- 34 -

1  sole purpose for the later filing was to hinder trustee's
2  administration of the debtor's residence.   Trustee Smith further
3  requested that her motion be heard on shortened time.   On July 26,
4  2005, Judge Holman ordered shortened time.   Mrs. Kincaid filed
5  opposition on July 27, 2005.   The title stated it was to the
6  request to shorten time but the substance of the opposition
7  addressed the merits of the underlying motion as well.   On August
8  9, 2005, the motion for relief from the automatic stay was granted
9  but the motion to dismiss was denied without prejudice.   An order
10 to that effect entered August 11, 2005.

11     On August 4, 2006, Mrs. Kincaid filed her chapter 13 plan, her
12 Schedules, and the Statement of Financial Affairs.   The Statement
13 of Financial Affairs was signed at the end but was blank other than
14 the pre-printed language of the form itself.   The plan was
15 unconfirmable.   It provided for $2,040 per month plan payments that
16 were not supported by Schedules I and J.   It provided for an
17 undefined plan term of "until the US Court of Appeals for the Ninth
18 Circuit has rendered a decision toward resolution of the core issue
19 of disallowance or allowance of creditor Red Shield Servicing,
20 Inc,. et. al.'s secured claims which has been pending in such court
21 since Jan. of this year. (Sic)" The plan proposed no dividend to
22 Class 7 (general unsecured) claims.   It also presumed that Mrs.
23 Kincaid would prevail on her appeal as it provided for no treatment
24 should the secured claim remain in the case.

25     On August 11, 2005, Mrs. Kincaid filed an *ex parte* motion
26 seeking an injunction against trustee Smith in the third case in
27 order to halt the sale of Mrs. Kincaid's residence.   On August 12,

28

2006 (order entered August 16, 2006), Judge Holman denied the *ex parte* motion because (1) it sought relief for which an adversary proceeding is required under Fed. R. Bankr. P. 7001(7); (2) there was no compliance with Fed. R. Bankr. P. 7065 incorporating Fed. R. Civ. P. 65(b) as to notice; and (3) there was no showing of irreparable injury as the property to be sold was not property of the chapter 13 estate.  Although the *ex parte* motion had been denied, Mrs. Kincaid submitted a declaration on August 15, 2005 in support of it.

On August 22, 2005, Mrs. Kincaid filed two motions to reconsider both (1) the order granting relief from the automatic stay to trustee Smith and (2) the order denying her *ex parte* motion for injunctive relief.  Both matters came on for hearing on September 27, 2005.  Both motions were denied because Mrs. Kincaid had failed to set forth any grounds to set aside the two orders. In each case, Mrs. Kincaid stated that the purpose of this fourth bankruptcy case was to save her house.  The court explained in its rulings that this case could not fulfill that purpose because the subsequent filing did not divest the chapter 7 estate of debtor's property.

On August 25, 2005, the trustee held and concluded the meeting of creditors.  His report indicated that he did not recommend confirmation of the debtor's plan and would be filing a motion to dismiss the case.  Trustee filed his motion to dismiss on September 27, 2005.  The motion alleged that Mrs. Kincaid was delinquent two plan payments and that there was nothing to rehabilitatate as the secured creditors would be paid in full through the pending sale in

debtor's chapter 7 case. The matter was originally set for October 26, 2005. However, at or about the time the calendar commenced, Mrs. Kincaid filed an "Urgent Request to Disqualify Judge under 28 U.S.C. S 455 to hear Motion to Dismiss Above Action." Debtor's "urgent request" was essentially identical to the motion filed in the third bankruptcy case on October 4, 2005. The motion to dismiss continued to November 23, 2005 and December 20, 2005 at which hearing the court consolidated all Kincaid motions from her second, third and fourth bankruptcy cases. After the disqualification motions were denied, the trustee's motion to dismiss this fourth bankruptcy case was granted pursuant to 11 U.S.C. § 1307(c)(1) and (c)(4). An order granting the motion entered December 22, 2005.

On January 3, 2006, Mrs. Kincaid filed a motion to reconsider the December 22, 2005 dismissal order. The motion contained several misstatements of law and fact. The first argument was that "this is the first time pro se debtor has seen this motion." Given the fact that Mrs. Kincaid appeared at the initial October 26, 2005 hearing on the motion to dismiss and informed the court of the filing of her motion to disqualify, her statement that "this is the first time that [she] had seen the motion" is at the very least implausible. Dismissal calendars are held only once a month on a day when no other chapter 13 matters are heard. There was no other reason for Mrs. Kincaid to appear before Judge Holman on October 26, 2005. But for her receipt of the motion, she would not know to appear. The motion to reconsider the December 22, 2005 dismissal order was not initially set for hearing because Mrs. Kincaid failed

to file a notice of hearing. The clerk issued a memorandum to that effect and placed a copy in the file. Not realizing the matter had not yet been set for hearing, trustee Smith filed opposition on January 10, 2006 and trustee Johnson filed opposition on January 13, 2006. Trustee Smith's opposition was a statement that debtor had submitted no credible relevant evidence supporting her motion to reconsider. Trustee Johnson's opposition was more specific. He argued that debtor had still not made any plan payments and stated his contention that the fourth case was filed solely "to hinder and delay the chapter 7 trustee's actions in the related chapter 7 case." He further argued that debtor's allegations of non-receipt of the motion lacked merit as it was properly served on her last known address as shown in the court's file. On January 25, 2006, Mrs. Kincaid filed a notice of hearing attempting to set the matter for hearing on January 31, 2006. The motion for reconsideration of the December 22, 2005 dismissal order was not set for hearing because the date chosen Mrs. Kincaid was not one on which the court heard chapter 13 matters. The clerk issued a memorandum to that effect and placed a copy in the file. Mrs. Kincaid made no further attempts to calendar the motion.

On January 26, 2006, the chapter 13 trustee issued his final report and account. No opposition was filed to it within the deadline set forth in the document itself. On March 1, 2006, the order approving the final report and account issued. On March 7, 2006, the bankruptcy case closed.

- 38 -

**ANALYSIS**

The Instant Motion to Reconsider

The court has detailed in prior rulings the legal standard to disqualify a judge. (Dkt. Nos. 380, 382, 431, & 478). The Kincaids have not met that legal standard in their prior attempts to disqualify this judge, or in this attempt. In fact, in this motion the Kincaids do not address the legal standard for disqualification at all. Rather, they make many of the same arguments they have made before, which boil down to the contention that because the court has ruled against their contentions, the court is biased against them. As this court has previously stated, repeating the same requests and arguments in multiple motions for reconsideration does not make either the requests more meritorious or the arguments more persuasive.

Neither have the Kincaids addressed the standards for reconsideration either under Federal Rule of Bankruptcy Procedure 9023 incorporating Federal Rule of Civil Procedure 59 or Federal Rule of Bankruptcy Procedure 9024 incorporating Federal Rule of Civil Procedure 60(b). They continue to make broad allegations that their due process rights have been violated, which suggests a motion under Federal Rule of Civil Procedure 60(b)(4), but they do not so specify.

At the hearing on this matter, Mrs. Kincaid correctly pointed out that this is her first motion to reconsider the April 7, 2006 Disqualification Order. However, it is but the latest in a series of attempts to disqualify Judge Holman from this bankruptcy case. The April 6, 2006 Disqualification Order was the fourth motion for

- 39 -

disqualification.  The first motion was filed October 4, 2005 (Dkt.

No. 337).  The first hearing on that matter, held November 1, 2005

(Dkt. No. 352), continued to December 20, 2005 at the request of

the debtor and over the objection of the trustee.  The first motion

was denied at a hearing held December 20, 2005 (Dkt. No. 382) and

by order entered December 23, 2005 (Dkt. No. 387).  The second

motion was filed November 15, 2005 (Dkt. No. 362) before the first

motion had been resolved.  The second motion was denied at a

hearing also held on December 20, 2005 (Dkt. No. 380) and by order

entered December 23, 2005 (Dkt. No. 386).  The third motion was

filed January 31, 2006 (Dkt. No. 418).  The Kincaids failed to file

a notice of hearing but attempted to have the matter heard and

decided at a hearing for another matter in this case calendared by

the Kincaids on January 31, 2006.  Through filing the third motion,

the Kincaids obtained a continuance of the other matter set for

January 31, 2006 to February 14, 2006.  Still having failed to set

the third motion for its own hearing, the court addressed and

denied the third motion at the hearing held February 14, 2006 on

the Kincaids' other motion for reconsideration (Dkt. No. 431).  An

order denying the third motion entered February 21, 2006 (Dkt. No.

439).  The fourth motion was filed March 7, 2006 (Dkt. No. 453)

(The "March 7, 2006 Motion").  The fourth motion was denied at a

hearing held April 4, 2006 (Dkt. No. 478) and by order entered

April 7, 2006 (Dkt. No. 485): the April 7, 2006 Disqualification

Order.  This motion to reconsider, filed April 17, 2006 (Dkt. No.

497), is the fifth such motion.  In addition, the Kincaids have

raised the court's alleged bias and expressly or implicitly sought

1 | disqualification in two additional motions in this third bankruptcy
2 | case: (1) a "Motion to Reconsider or to Set Aside Jan. 23, 2006
3 | Order ...." (Dkt. No. 423); Minutes of March 7, 2006 hearing (Dkt
4 | No. 456); Order denying motion (Dkt No. 458) and (2) a "Motion to
5 | Reconsider or to Vacate Feb. 17, 2006 Order ...." (Dkt. No. 447);
6 | Minutes of April 4, 2006 hearing (Dkt. No. 479); Order denying
7 | motion (Dkt. No. 483).
8 |     In the instant motion, the Kincaids first argue that the court
9 | should not have treated the March 7, 2006 Motion as a motion for
10 | reconsideration because it sought new relief in the form of "Full
11 | Retroactive Disqualification" and "Vacatur of All Prior
12 | Acts/Orders." This argument is unpersuasive. In order for the
13 | court to even consider those two issues, it must first decide in
14 | the Kincaids' favor on the issue of disqualification. As noted
15 | above, the debtor has repeatedly raised that issue. In an attempt
16 | to avoid having to satisfy the standards for reconsideration either
17 | under Federal Rule of Bankruptcy Procedure 9023 incorporating
18 | Federal Rule of Civil Procedure 59 or Federal Rule of Bankruptcy
19 | Procedure 9024 incorporating Federal Rule of Civil Procedure 60(b),
20 | the debtor has changed the titles of subsequent motions and
21 | included "facts" related to the denial of the immediately prior
22 | motion. This is nothing more than an attempt to elevate form over
23 | substance. The court's treatment of the March 7, 2006 Motion as a
24 | motion for reconsideration was entirely proper. Furthermore, the
25 | Kincaids' current motion omits the fact that the court
26 | alternatively treated the March 7, 2006 Motion as one seeking
27 | disqualification for acts occurring since the prior motion for
28 |

- 41 -

disqualification was denied on February 21, 2006.

The Kincaids' second argument, that "no order was made in the earlier motion to disqualify judge," is frivolous.  As shown in the detailed chronology above, an order on each of the Kincaids' motions to disqualify Judge Holman was entered on the docket in the appropriate bankruptcy case.

The Kincaids' third argument is that "the acts and/or orders of Judge Holman are mostly erroneous or violate Kincaids' rights to due process that they could only be the result of bias or appearance of bias against Kincaids."  This same argument has been made in each of the prior disqualification motions.  It is no more persuasive in its fifth iteration than it was in the previous four.  The Kincaids do provide another alleged example of bias.  They focus attention on an amended order "dated and signed February 16, 2006."  They argue that order was a "sham" and the Kincaids were denied the opportunity to respond to the motion to amend before the order was signed.  Contrary to the debtor's assertion, the circumstances surrounding the signing of the amended order are not evidence of bias.

The underlying motion (Dkt. No. 275) on which the amended order entered was a compromise between the trustee, the Mortgage Creditors and those parties sued by the Kincaids in AP 03-2260 for which an appeal was then pending before the 9th Circuit.  A copy of the compromise agreement was attached as an exhibit to the declaration of Susan K. Smith (Dkt. No. 277).  The latter two groups are substantially the same but there are parties included as defendants in the litigation group that are not Mortgage Creditors.

This latter fact caused much of the confusion on this issue.  In
the tentative ruling issued by the court prior to the November 1,
2006 hearing on the compromise, the court included a shorthand
reference to the two groups of parties settling with the trustee,
calling them "Spartan/Chess."  The court did not make the tentative
ruling its ruling because debtor successfully sought a continuance
of her first motion to disqualify and the compromise motion to
December 20, 2006.

     At the hearing December 20, 2005, attorney Julia Gibbs
appeared representing AMCAP Financial Services, Inc., ("AMCAP").
No tentative ruling had issued on December 20, 2005 as the court
believed it should resolve the disqualification motions first.  Ms.
Gibbs expressed concern that the tentative ruling from November 1,
2006, omitted reference to her clients who were also parties to the
settlement.  The Disposition After Oral Argument ultimately issued
by the court and appended to the minutes (Dkt. No. 379), expanded
the named parties to include AMCAP specifically noting that it was
a defendant in the matter pending before the Court of Appeals.  The
ruling directed the trustee to submit an order that conformed to
the court's ruling.  The trustee ultimately submitted the order and
it was entered on the docket February 6, 2006 (Dkt. No. 425).

     However, the February 6, 2006 order did not conform to the
court's ruling as it omitted reference to AMCAP.  On February 16,
2006, AMCAP and its principal Reb Bieber filed a motion to amend
the February 6, 2006 order.  On February 16, 2006, the court signed
the amended order and the clerk entered it on February 17, 2006.
The court did so pursuant to Federal Rule of Bankruptcy Procedure

- 43 -

1 9024 incorporating Federal Rule of Civil Procedure 60(a) which

2 provides in relevant part: "Clerical mistakes in judgments, orders

3 or other parts of the records and errors therein arising from

4 oversight or omission may be corrected by the court at any time of

5 its own initiative or on the motion of any party and after such

6 notice, _if any_, as the court orders." (West 2006) (emphasis added).

7 The Rule permits such changes to be made without notice or a

8 hearing.  In this instance, the amended order did not alter the

9 substance of the ruling.  It omitted the incomplete description of

10 the parties; opting instead to incorporate those "[d]efendants, as

11 identified in the Settlement Agreement,..."  This latter

12 description conformed to the court's ruling whereas the initial

13 order did not.  Holding a hearing on the matter was unnecessary.

14   Unfortunately, the amended order itself was incomplete.  AMCAP

15 had failed to include an exhibit to the settlement agreement that

16 listed all of the parties to the settlement.  This second motion to

17 alter or amend was permitted a hearing to allow the court ample

18 opportunity to ensure that the second amended order was complete

19 and conformed to the court's ruling.  The second motion was granted

20 at a hearing held April 4, 2006 (Dkt. No. 477).  The minute order

21 granting the motion to amend entered April 7, 2006 (Dkt. No. 487).

22 The second amended order itself has not yet been submitted by Ms.

23 Gibbs as directed by the court's April 7, 2006 order.

24   The Kincaids further argue that bias is shown by the fact that

25 the first amended order contained a hearing date of December 20,

26 2005, the date of the hearing where the compromise motion was

27 granted.  There is no bias.  The order is as it should be.  If a

28

hearing is held, orders are to reference the date and time of that hearing.  The amended order granting the compromise properly references the hearing at which the compromise motion itself was granted.  The Kincaids' argument to the contrary is without merit.

Finally, the Kincaids assert that Judge Holman is biased based on a credibility determination he made on the record at the December 20, 2005 hearings.  The determination revolved around Mrs. Kincaid's attempts to have the December 20, 2005 hearings continued; some motions for a third or fourth time.  Early in the day on December 20, 2005, the courtroom deputy received two phone calls stating that Mrs. Kincaid was ill and which requested that the hearings be continued.  At the hearing, the trustee stated the he had been told that Mrs. Kincaid had been seen entering the courthouse that morning.  As evidence supporting her statement that she was in fact ill, Mrs. Kincaid provides a letter from Loyal A. Miner, Jr.  The letter is not signed under penalty of perjury. Furthermore, it does not support the Kincaids' position to the extent that they wish.  The hearings in question occurred December 20, 2005.  The letter states that Mrs. Kincaid was unable to attend a holiday dinner on December 17, 2005 and that Mr. Miner was informed of that fact by telephone "earlier that week."  It also states that Mr. Miner delivered some medicine to Mrs. Kincaid's residence "during the week of December 19, 2005."  It is important to note what the letter does not state.  It does not state that Mrs. Kincaid did not enter the courthouse on December 20, 2005.  It does not even opine that she would have been unable to do so.  In short, it is unhelpful to the Kincaids.

1    Even if the court had not made the credibility determination,

2  it would not have changed the outcome.  The court had specially set

3  matters in three of the Kincaids' then pending bankruptcy cases to

4  be heard on that date.  Some matters had already been continued as

5  many as three times.  The Kincaids' motions were woefully

6  inadequate.  The myriad procedural defects are listed in detail in

7  the rulings.  See Dkt. Nos. 376, 378, 380, and 382.  Furthermore,

8  there was no legal merit to any of the debtor's motions on calendar

9  that day.  The court will not restate each of the rulings as they

10 were extensive and are appended to the aforementioned minute

11 entries.  The court again notes that it did continue the trustee's

12 motion to use estate funds to clean up the Penryn property as the

13 Kincaids had raised a potentially meritorious argument in

14 opposition.  The court ultimately granted the motion but only after

15 the trustee provided evidence showing that administration of the

16 Penryn property was necessary to pay administrative expenses and

17 the claims filed in this case.

18

19                        **CONCLUSION**

20    The Kincaids have failed to carry their burden of proof that

21 the court should reconsider the April 7, 2006 Disqualification

22 Order.  For the above reasons, the motion is denied.  The court

23 will issue a separate order consistent with the foregoing decision.

24

25 Dated:  JUL 17 2006

26

27                        THOMAS C. HOLMAN
                          UNITED STATES BANKRUPTCY JUDGE
28
                              - 46 -

**CERTIFICATE OF MAILING**

I,                      , in the performance of my duties as Deputy

Clerk to the Honorable Thomas C. Holman, mailed by ordinary mail a

true copy of the attached document to each of the parties listed

below:

Estrella A. Kincaid
James M. Kincaid
805 F Street
Sacramento CA 95814

Estrella A. Kincaid
James M. Kincaid
P.O. Box 584
Sacramento CA 95812

Susan Smith
Chapter 7 trustee
7485 Rush River Dr., Ste 710-218
Sacramento CA 95831

J. Russell Cunningham, Esq.
Desmond Nolan, Livaich & Cunningham
1830 15th Street
Sacramento CA 95814

Office of the U.S. trustee
U.S. Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

DATE: 7/18/06

_____
Deputy Clerk
                    R. Lopez

- 47 -