FILED

JUN 1 2 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                            )
                                  )
                                  )   Case No. 05-21390-B-7
ESTRELLA A. KINCAID and           )
JAMES M. KINCAID,                 )
                                  )
              Debtors.            )   D.C. No. None
                                  )
                                  )
_____)

## MEMORANDUM DECISION

By the present motion the debtors seek a stay of the court's order denying their motion for reconsideration of the court's order (Dkt. 485) denying the Fourth Holman Disqualification Motion, as hereinafter defined.  Alternatively, the debtors seek the recusal of Judge Holman pursuant to 28 U.S.C. § 455(a) from hearing this motion and all concurrent and subsequent motions.  The matter came on for final hearing on April 17, 2007, at 9:30 a.m.  Appearances are noted on the record.  The Court has jurisdiction over this matter, and it is a core proceeding. 28 U.S.C. §§ 1334 and 157. The following constitutes the court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 *et seq*., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

1     Neither the respondent within the time for opposition nor the

2 movant within the time for reply has filed a separate statement

3 identifying each disputed material factual issue relating to the

4 motion.  Accordingly, both movant and respondent have consented to

5 the resolution of the motion and all disputed material factual

6 issues pursuant to FRCivP 43(e).  LBR 9014-1(f)(1)(ii) and (iii).

7     The request for recusal is denied.  The request for a stay

8 pending appeal is denied.

9

10                               **PROCEDURAL HISTORY**

11     In order to address this motion properly, the court provides

12 the following procedural history.  The court takes judicial notice

13 pursuant to Federal Rule of Evidence 201(c) of the facts stated in

14 this procedural history.  This case is the third bankruptcy case

15 filed by both James Kincaid ("J. Kincaid") and Estrella Kincaid

16 ("E. Kincaid")(collectively, "the Kincaids").  Additionally, E.

17 Kincaid alone filed a fourth bankruptcy case while this third case

18 was pending.

19

20                 The First Bankruptcy Case, No. 00-31871

21

22     Bankruptcy Case 00-31871 was filed October 26, 2000, as a

23 skeleton chapter 13 case.  The case was randomly assigned to

24 Department B (Judge McKeag).  In late December, 2000, the case was

25 transferred to Department A (Judge McManus).  The case transfer

26 occurred as a result of the retirement of The Honorable David E.

27 Russell, Judge McManus' transfer to Sacramento Department A (Judge

28                            - 2 -

1 Russell's former department) from Modesto and a general re-

2 distribution of cases among the Sacramento departments of the

3 bankruptcy court that occurred because of the foregoing events.

4     The Kincaids filed the first case in propria persona.  With

5 the petition, the Kincaids filed Schedule A and a list of the 20

6 largest unsecured creditors.  The Kincaids also received approval

7 to pay the filing fee in installments.

8     The master address list was filed October 31, 2000.  On

9 December 5, 2000, the chapter 13 trustee, Jan Johnson, filed a

10 motion to dismiss for failure to file a chapter 13 plan, the

11 Summary of Schedules, Schedules B-J and the Statement of Financial

12 Affairs.  (D.C. No. JPJ-1, Dkt. 12)[2].  At a hearing held January

13 31, 2001, the Kincaids were given ten (10) days to file the missing

14 documents.  The order after hearing entered on February 20, 2001,

15 extended that deadline to February 22, 2001.  (Dkt. 34).  The

16 required documents were not filed and the first case was dismissed

17 by order entered March 5, 2001.  (Dkt. 35).

18     The court notes that creditor Red Shield Servicing, Inc. ("Red

19 Shield"), servicing agent for the loans secured by two deeds of

20 trust on the Kincaids' residence, filed a motion for relief from

21 the automatic stay on January 9, 2001.  (D.C. No. RCI-1, Dkt. 18).

22 The case was dismissed before a final hearing could be held on the

23 motion.  The motion was denied as moot on March 8, 2001.  (Dkt.

24 38).  The court also notes that the Kincaids did not file any

25

26     [2] All references to docket entry numbers within each bankruptcy case

27 summary in this procedural history refer to the docket entry numbers for the case being summarized.

28                         - 3 -

adversary proceedings during the pendency of the first case.

## The Second Bankruptcy Case, No. 01-22358

The Kincaids filed the second bankruptcy case in propria persona on March 5, 2001; the date that the clerk entered the order dismissing the first bankruptcy case.  A skeleton petition under chapter 7 (accompanied by a master address list,) commenced the second case, which was randomly assigned to Department C (Judge Klein).  The Kincaids again received approval to pay the filing fee in installments.  All installments were paid by July 26, 2001.

### Conversion to Chapter 13 (March 2001)

On March 20, 2001, the Kincaids filed an application to convert the case to one under chapter 13.  (Dkt. 8).  The conversion was granted by the clerk pursuant to authority delegated under Special Order 93-1 and the case was reassigned to Department A (Judge McManus).  Reassignment from Department C to Department A was necessary because at the time of conversion, Judge McManus was responsible for all Sacramento chapter 13 cases.  Jan Johnson was appointed as chapter 13 trustee for the second case.

### Red Shield Servicing's First and Second Motions for Relief from the Automatic Stay (March 2001 - September 2001)

Creditor Red Shield filed a motion for relief from the automatic stay to foreclose on the Kincaids' residence on March 29, 2001.  (D.C. No. RCI-1, Dkt. 11).  The motion was denied on May 1, 2001 for lack of cause.

- 4 -

Red Shield filed a second motion for relief from the automatic stay on August 15, 2001.  (Dkt. 39).  That motion was denied without prejudice on September 4, 2001.

The main case contains no docket entries from November 2, 2001 to March 24, 2003.  During that time, all activity was occurring in two adversary proceedings, which are detailed below.

Chapter 13 Trustee's Motion to Reconvert Case to Chapter 7 and Confirmation of Debtors' Plan (May 2001 - November 2001)

On May 1, 2001 the chapter 13 trustee filed a motion to re-convert the case to chapter 7.  (D.C. No. JPJ-1, Dkt. 21).  The trustee withdrew the motion on May 8, 2001 because on May 2, 2001, the Kincaids had filed a chapter 13 plan, their Schedules and the Statement of Financial Affairs.  The 341 meeting was held and concluded on May 3, 2001.  The plan was confirmed by order entered June 1, 2001.  (Dkt. 34).  The confirmation order was "amended" on November 1, 2001.  (Dkt. 47).

The Mortgage Creditors' Motion for Relief from the Automatic Stay and Debtors' First Appeal (March 2003 - January 2004)

On March 24, 2003, the individual holders of the two notes secured by the Kincaids' residence (the "Mortgage Creditors"), as opposed to Red Shield, filed a third motion for relief from the automatic stay with respect to the Kincaids' residence.  (D.C. No. FWK-2, Dkt. 50).  Judge McManus granted this third motion in part at a hearing held April 30, 2003.  (Dkt. 71).  On May 27, 2003, Judge McManus ordered adequate protection - that the Kincaids must

confirm a modified plan within 90 days that complied with

1325(a)(5)(B) or the Mortgage Creditors would receive relief from

the automatic stay by subsequent order.  (Dkt. 81).  On June 6,

2003, the Kincaids appealed (the "First Appeal") the adequate

protection order to the Bankruptcy Appellate Panel ("BAP").  (Dkt.

85).  The Kincaids did not seek a stay pending appeal from the

bankruptcy court when the First Appeal was filed.  On August 22,

2003, the BAP denied a separate motion for stay pending appeal

because no request had been first made in the bankruptcy court.

(Dkt. 105).  On August 27, 2003, the BAP itself granted a temporary

stay on reconsideration of its earlier order denying the stay.

(Dkt. 102).  The Kincaids had filed a modified chapter 13 plan

(Dkt. 99), a motion to confirm the plan (Dkt. 101), and a motion to

extend the time to confirm said plan on August 26, 2003 (Dkt. 100),

but both of those motions were withdrawn on August 29, 2003 after

the BAP issued its temporary stay.  (Dkt. 104).

On September 12, 2003, debtor E. Kincaid filed her first

"Urgent Emergency Request."  (Dkt. 106).  In it, she sought either

(1) an injunction against further violations of the automatic stay

or (2) a stay pending appeal.  Without first obtaining an order

granting relief from the automatic stay based on default under the

May 27, 2003 adequate protection order, the Mortgage Creditors had

published a notice of sale of the Kincaids' residence.  On

September 17, 2003, Judge McManus issued an order setting an

October 15, 2003 hearing to consider sanctions for violations of

the automatic stay and to reconsider whether to grant relief from

the stay.  (Dkt. 107).  Judge McManus took the matter under

advisement on October 15, 2003.

On October 24, 2004, the BAP issued an order in the First Appeal that (1) granted leave to appeal the interlocutory adequate protection order, (2) extended the temporary stay first established in the BAP's August 28, 2004 order, and granted a limited remand for Judge McManus to issue an order after the October 15, 2003 hearing.  Judge McManus issued his ruling on December 29, 2003 in which he ruled: (1) the Mortgage Creditors had violated the automatic stay by scheduling and publishing notice of their foreclosure sale and by failing to rescind for 22 days; (2) the Mortgage Creditors did not violate the BAP's stay because they had not yet received it; (3) the automatic stay was not terminated at the time of the ruling; (4) the Mortgage Creditors were sanctioned $500 for their violation of the automatic stay (no greater damages having been established); and (5) the sanctions order was stayed until sanctions motions against the Kincaids in the related adversary proceedings were decided.  (Dkt. 117).  On January 26, 2004, the BAP dismissed the First Appeal for reasons not disclosed in the order.

> Chapter 13 Trustee's Motion to Dismiss Case and Debtors'
> Motion for Reconsideration (September 2004 - October
> 2004)

The docket is silent from March 15, 2004 to September 15, 2004.  On the latter date, the trustee moved to dismiss the second bankruptcy case, principally because the Kincaids had not paid the claims of the Mortgage Creditors in full as required by their confirmed chapter 13 plan, the term of which had expired, and Judge

McManus had dismissed with prejudice the Kincaids' complaint against the Mortgage Creditors.  (Dkt. 122).  (see discussion below).  The Kincaids neither filed opposition to the trustee's motion nor appeared at the hearing on the motion.  Judge McManus granted the trustee' motion at a hearing on October 5, 2004.  He issued a memorandum opinion (Dkt. 128) and order (the "Case 01-22358 Dismissal Order") (Dkt. 129) on October 8, 2004.  The order also dissolved the stay of the $500 sanctions order.

Also on October 8, 2004, the Kincaids filed a motion to reconsider the Case 01-22358 Dismissal Order.  (Dkt. 130).  Judge McManus set the motion for a hearing on October 18, 2004.  After that hearing, Judge McManus issued a memorandum decision denying the motion for reconsideration.  (Dkt. 140).  An order to that effect was entered October 19, 2004.  (Dkt. 141).

Reassignment of Bankruptcy Case to Judge McKeag (November 2004)

On November 18, 2004, the second bankruptcy case was reassigned to Department B (Judge McKeag) as part of an internal restructuring of the Sacramento Division caseload to spread the chapter 13 cases between Departments A and B.  (Dkt. 149).

Debtors' Second Appeal (October 2004 - March 2006)

On October 28, 2004, the Kincaids appealed the Case 01-22358 Dismissal Order to the BAP (the "Second Appeal").  (Dkt. 143).  No request for a stay pending appeal was made at that time.  On October 29, 2004, the BAP denied a motion for reconsideration of the Kincaids' request for a writ of mandamus (the original request itself does not appear on the bankruptcy court's docket).  (Dkt.

144).  On November 16, 2004, the BAP denied a second motion for
reconsideration.  (Dkt. 148).  On December 8, 2004, the BAP denied
an "amended" petition for a writ of mandamus.  The BAP ordered the
Kincaids not to submit any further requests for mandamus relief.
(Dkt. 152).  On December 28, 2004, the BAP issued an order that it
would not consider the Kincaids' "response" to the December 8, 2004
order.  It further ordered the BAP clerk not to accept any further
pleadings from the Kincaids on the mandamus issue except a notice
of appeal.  (Dkt. 154).  On January 7, 2005, the BAP issued a
certificate of record as a result of the Kincaids' appeal to the
Ninth Circuit Court of Appeals of the denial of a writ of mandamus.
(Dkt. 155).  On January 11, 2005 the BAP denied the Kincaids'
motion to stay pending appeal the BAP's order denying the writ of
mandamus.  (Dkt. 156).

On March 29, 2005, the BAP dismissed the Second Appeal for
failure to prosecute.  (Dkt. 164).  No notice of appeal of the
March 29, 2005 order appears in the bankruptcy court's file.
However, subsequent events show that it was in fact further
appealed to the 9th Circuit.  On March 29, 2006, in two unpublished
decisions, the 9th Circuit affirmed the dismissal by the BAP of the
Second Appeal and the BAP's denial of a writ of mandamus.  (Dkt.
210).  The court's file contains no information as to whether the
Kincaids attempted to obtain further review of these two 9th Circuit
decisions.

Debtors' Motion for Preliminary Injunction (February 2005)

On February 3, 2005, the Kincaids filed a motion for a
preliminary injunction.  (Dkt. 157).  That motion was filed in the

- 9 -

bankruptcy court, but it was clearly directed to the BAP as it
sought reconsideration of the BAP's January 11, 2005 order.  That
motion was not calendared by the clerk of the bankruptcy court
because the Kincaids failed to file a notice of hearing.  The clerk
mailed the Kincaids a memorandum to that effect and placed a copy
in the court file.  (Dkt. 160).  The BAP, having received the same
motion, denied it on February 7, 2005, ruling that the Kincaids had
no likelihood of success on the merits in the 9th Circuit as the
only order on appeal was the denial of a writ of mandamus.  (Dkt.
161).

>        Chapter 13 Trustee's First Final Report and Account,
>        Debtors' Objection, and Reassignment of Case to Judge
>        Holman (May 2005 - July 2005)

On May 19, 2005, the chapter 13 trustee issued his final
report and account, giving notice that objections must be filed
within thirty days.  (Dkt. 169).  The Kincaids timely objected to
the trustee's final report on June 20, 2005.  The Kincaids
expressed no objection to the contents of the report.  They
objected only to the closing of the case arguing that it would moot
their then-pending Second Appeal.

Between the time the objection was filed and the July 12, 2005
hearing, the second bankruptcy case was again reassigned to Judge
Holman.  This reassignment occurred because of the retirement of
Judge McKeag and Judge Holman's transfer to Sacramento Department B
from Modesto.  Judge Holman overruled the Kincaids' objection to
the trustee's final report on July 12, 2005.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Chapter 13 Trustee's Second Final Report and Account,</u>

<u>Debtors' Motion to Reconsider, and Closing of the Second</u>

<u>Case (August 2005 - January 2006)</u>

On August 18, 2005, the chapter 13 trustee filed a second final report and account.  (Dkt. 182).  The Kincaids filed an objection to this second report on September 19, 2005.  As with the first objection, the Kincaids objected that the dismissal of this case would adversely affect the Second Appeal.  They also objected based on a motion filed in their third bankruptcy case.  The hearing on the objection to the trustee's second final report and account was continued twice to allow the court to resolve motions to disqualify Judge Holman filed in the Kincaids' two subsequent bankruptcy cases.  On December 20, 2005, Judge Holman overruled the objection to the trustee's second final report and account, but retained jurisdiction to the extent necessary to allow the Kincaids' appeals before the Ninth Circuit Court of Appeals to proceed to conclusion.  (Dkt. 197).  An order to that effect was entered December 22, 2005.  (Dkt. 198).

On January 3, 2006, the Kincaids filed a motion to reconsider the December 22, 2005 order arguing a general violation of their due process rights.  (Dkt. 201).  The matter was not set for hearing because the Kincaids failed to file a notice of hearing. The clerk issued a memorandum to that effect and placed a copy in the file on January 4, 2006.  (Dkt. 202).  On January 10, 2006, the court approved the final report by order.  (Dkt. 204).  On January 11, 2006, the bankruptcy case was closed.  Belatedly, on January 25, 2006, the Kincaids attempted to notice their motion to

1   reconsider for a January 31, 2006 hearing.  (Dkt. 208).  The matter

2   was not calendared because the case had closed.  The clerk issued a

3   memorandum to that effect and placed a copy in the file on January

4   26, 2006.  (Dkt. 209).

5

6   <u>Adversary Proceeding 01-2192</u>

7

8   On April 30, 2001, in the second bankruptcy case, the Kincaids

9   filed an adversary proceeding (01-2192) against the Mortgage

10   Creditors.  The complaint (Dkt. 1) contained five causes of action:

11   (1) captioned "Economic Duress/Undue Influence," but including

12   allegations of improper loan fees, usurious interest, and bad

13   faith; (2) "Fraud/Detrimental Reliance," but including allegations

14   of improper foreclosure; (3) "Breach of the Implied Covenant of

15   Good Faith and Fair Dealings (sic)," including allegations that the

16   Mortgage Creditors breached a contract to refinance and instead

17   instituted foreclosure proceedings; (4) "Breach of Contract,"

18   including allegations of the Mortgage Creditors' refusal to

19   refinance the loans pursuant to their contract; and (5) "Punitive

20   Damages, Damages for Emotional Distress," seeking damages for

21   defendants' "fraudulent conduct and outrageous disregard for the

22   Kincaids' desperate need for funds."  The damages sought were $1

23   million total.  It sought a setoff against the amount of the

24   Mortgage Creditors' loans and a money judgment for any balance.

25   A limited number of the defendants answered on May 24, 2001.

26   (Dkt. 11).  Judge McManus issued a scheduling order on September

27   10, 2001.  (Dkt. 16).  The order included deadlines to and

28

- 12 -

including a pre-trial conference set for January 30, 2002.   On
November 14, 2001, the court rescheduled the pre-trial conference
to February 13, 2002.   The file reflects that the Kincaids
propounded interrogatories and requests for admission to defendants
on or about January 4, 2002.   (Dkt. 27-29).   Pursuant to the terms
of the scheduling order, discovery had closed December 7, 2001.   By
separate order entered January 2, 2002, the court ordered the
Kincaids to file a pre-trial statement by January 21, 2002.   The
court ordered the Mortgage Creditors to file their pre-trial
statement by January 28, 2002.   (Dkt. 21).   At the pre-trial
conference held February 13, 2002, Judge McManus set the matter for
trial on April 10, 2002 and April 11, 2002.   The court ordered the
Kincaids to lodge their exhibits with the court within 14 days.
They did so on February 27, 2002.

On March 5, 2002, the Kincaids filed an application to
postpone the trial because E. Kincaid claimed to have injured
herself in a fall.   (Dkt. 34).   Judge McManus issued a detailed
pre-trial order on March 21, 2002 in which he continued the trial
to May 29 and 31, 2002.   On April 12, 2002, the Kincaids filed a
motion for a further continuance of the trial and a belated
objection to the pre-trial order.   (Dkt. 43).   After a hearing on
April 23, 2002, Judge McManus issued an amended pre-trial order
continuing the trial to August 1 and 2, 2002 before Judge Whitney
Rimel.   (Dkt. 51).   Judge Rimel was assigned to preside over the
trial due to a scheduling conflict for Judge McManus in July and
August, 2002.   Judge Rimel was also to handle any subsequent
motions.

On May 28, 2002, the Kincaids filed a motion for leave to file a motion for summary judgment. (Dkt. 52). The motion was denied by Judge Rimel on June 24, 2002. The order did allow the Kincaids to file a motion seeking corrections to the pre-trial order's statement of undisputed facts. (Dkt. 57). Also on June 24, 2002, the adversary was returned to Judge McManus because his scheduling conflict had been resolved. Judge McManus required that any requests for changes to the pre-trial order be filed by June 28, 2002.

The Kincaids filed their requests timely. (Dkt. 58). At a hearing on July 3, 2002, it became apparent that the scope of the changes would require an amended complaint. The Kincaids were ordered to file a motion to amend the complaint on or before July 12, 2002. (Dkt. 60). The Kincaids filed their motion three days late on July 15, 2002. The motion was opposed, but it was ultimately granted in an order entered July 26, 2002. (Dkt. 67).

The Kincaids filed their first amended complaint on July 26, 2002. (Dkt. 68). The amended complaint stated additional claims for Fraudulent Inducement, misrepresentation, negligence, breach of fiduciary duty, "fraudulent conspiracy," and "Beneficiaries bound by agent's wrongdoing." The amount of monetary damages sought was the same but the Kincaids added a request for injunctive relief, "suspending Kincaids' obligations under the notes until complaint resolved," in the prayer. Some defendants answered the complaint on August 2, 2002. (Dkt. 81). A status conference was set for September 25, 2002.

On August 5, 2002, the Kincaids requested permission to serve

by publication.  (Dkt. 83).  The request was denied on August 21,
2002.  Additional defendants answered on August 26, 2002.  The
September 25, 2002 status conference was continued to October 30,
2002.  On October 9, 2002, the Kincaids filed proofs of service for
what appears to be most of the remaining defendants.  On October
22, 2002, the newly answering defendants filed a motion for a more
definite statement and sought dismissal pursuant to Fed. R. Bankr.
P. 7012 incorporating Fed. R. Civ. P. 12(b)(6).  (Dkt. 114).  On
November 15, 2002, the Kincaids filed opposition along with a
counter-motion to file a second amended complaint.  (Dkt. 123).  On
November 19, 2002, Judge McManus granted the 12(b)(6) motion in
part and gave the Kincaids 15 days to file a further amended
complaint.  (Dkt. 126).

On December 2, 2002, the Kincaids filed an ex parte request to
extend that deadline to January 11, 2003 and to continue the status
conference to February 26, 2003, alleging that E. Kincaid was
medically unable to comply with the earlier deadlines.  (Dkt. 129).
On December 12, 2002, Judge McManus ordered the status conference
continued to February 26, 2003.  On December 19, 2002, Judge
McManus issued a memorandum decision and order extending the
deadline for the Kincaids to file and serve the second amended
complaint to December 31, 2002.  (Dkt. 138, 139).

The Kincaids filed their second amended complaint on January
9, 2003.  The second amended complaint was served January 10, 2003
on some defendants, and on January 22, 2003 on others.  It added a
claim for "constructive fraud" and for the first time included
specific allegations against the individual investor defendants.

- 15 -

(Dkt. 141).  On January 21, 2003, defendants filed a motion to
strike the second amended complaint as untimely.  (Dkt. 151).  The
Kincaids opposed.  Judge McManus took the matter under submission
on March 3, 2003 and issued a memorandum decision and order on
March 4, 2003 dismissing the second amended complaint pursuant to
Fed. R. Civ. P. 41(b) for failure to comply with an order of the
court and alternately under Fed. R. Civ. P. 16(f) for failure to
comply with the court's pre-trial order.  (Dkt. 200, 201).  After
this ruling, the first amended complaint was the operative
complaint.

On March 17, 2003, the Kincaids filed a motion to reconsider
the order striking the second amended complaint.  (Dkt. 204).  The
motion was opposed, and it was ultimately denied at a hearing held
on April 30, 2003.  An order to that effect was entered May 13,
2003.  (Dkt. 227).  On May 9, 2003, Judge McManus issued an amended
scheduling order setting, *inter alia*, a pre-trial conference for
November 19, 2003.  On May 23, 2003, defendant James Fisher filed a
motion for judgment on the pleadings as to him.  (Dkt. 231).  The
motion was opposed, and it was ultimately granted by Judge McManus
on August 19, 2003.  (Dkt. 247).  On June 19, 2003, the Kincaids
filed a notice of voluntary dismissal (Dkt 236).  The notice was
ineffective because answers had been filed (Dkt. 246).

On October 1, 2003, defendants AMCAP, Inc., and Reb Bieber
filed a motion to compel the Kincaids' responses to discovery and
for sanctions.  (Dkt. 248).  The motion to compel was granted on
October 20, 2003.  The court reserved ruling on the request for
sanctions.  On October 24, 2003, the remaining answering defendants

filed their own motion to compel.  The Kincaids filed opposition to
the motion the morning of the hearing on November 10, 2003.  The
motion was granted in part by Judge McManus.  (Dkt. 269).

On February 23, 2004, Judge McManus dismissed this adversary
proceeding (No. 01-2192) without prejudice (Dkt. 274).  The order
states that it was dismissed "at the prior request of the
plaintiffs, and as confirmed by Estrella Kincaid orally and on the
record at the status conference held on February 4, 2004."  The
Kincaids apparently sought dismissal because they had filed a
duplicate adversary proceeding (No. 03-2260) shortly after their
motion to reconsider dismissal of the second amended complaint in
AP 01-2192 was denied.

<u>Adversary Proceeding 03-2260</u>

On May 6, 2003, after denial of their motion to reconsider
dismissal of the second amended complaint in AP 01-2192 was denied,
but well before AP 01-2192 was dismissed in total, the Kincaids
filed adversary proceeding 03-2260.  The defendants in this
adversary proceeding were identical to those named in the second
amended complaint dismissed in AP 01-2192.  On June 4, 2003, prior
to the filing of any answer, the Kincaids filed their first amended
complaint (and fifth complaint overall).  (Dkt. 13).  On June 12,
2003, defendants moved to dismiss the first amended complaint under
Federal Rules of Civil Procedure 41(b) and 12(b)(6).  (Dkt. 14).
Essentially all defendants "joined" in this motion.  It was opposed
by the Kincaids.  In a decision dated August 18, 2003, Judge

McManus denied the motion because, while the 1st amended complaint in this case is essentially identical to the 2nd amended complaint dismissed in AP 01-2192, that dismissal was without prejudice and was based on untimeliness under the court's orders in AP 01-2192. (Dkt. 63). No such orders restricted the filing of the first amended complaint in AP 03-2260.

On August 29, 2003, certain defendants filed a motion under Federal Rules of Civil Procedure 12(b)(6) and 12(e). (Dkt. 73). The motion was granted in part on September 29, 2003 and the negligence cause of action was dismissed without leave to amend. (Dkt.. 94). The remaining claims were allowed to proceed. On September 12, 2003, certain defendants filed a motion to exclude documents and for sanctions for failure of the Kincaids to comply with discovery orders. (Dkt. 76). The order was granted in part. The Kincaids were compelled to appear at depositions to be held in Judge McManus' courtroom at specified dates and times. (Dkt. 93). The remainder of the sanctions request was reserved.

After denial of the Rule 12 motions, answers were filed on October 10, 14, and 15, 2003. (Dkt. 97, 99, 101). At a status conference on February 4, 2004, Judge McManus established a schedule for the adversary proceeding. The scheduling order was entered on February 23, 2004. (Dkt. 112). The Kincaids filed a motion to reconsider the scheduling order on February 4, 2004; almost immediately after the conclusion of the status conference. (Dkt. 111).

The February 23, 2004 scheduling order established deadlines up through a pre-trial conference set on May 27, 2004. Pre-trial

statements were due five court days before the hearing.  On May 11,
2004, the Kincaids filed a motion seeking fact finding on
discrepancies between sets of admissions from different defendants.
(Dkt. 125).  On May 13, 2004, the Kincaids filed a motion to compel
answers to interrogatories.  (Dkt. 127).  On May 19, 2004, the
Kincaids filed a motion similar to the May 11 motion.  (Dkt. 130).
On May 20, 2004, Judge McManus issued an order that the Kincaids'
motions be heard on May 27, 2004, the date of the pre-trial
conference.  The motion to compel response to interrogatories was
granted in part.  (Dkt. 144).  The remaining motions were denied.
(Dkt. 145-147).

The pre-trial conference was continued to June 2, 2004.  The
Kincaids attempted to amend their pre-trial statement the morning
of June 1, 2004.  (Dkt. 161).  Judge McManus struck the amended
pre-trial statement and a notice of errata also filed by debtors on
June 1, 2004, from the record.  (Dkt. 163).  The pre-trial
conference was continued to June 4, 2004.  On June 3, 2004 the
Kincaids filed two documents detailing additional disputed and
undisputed facts.  (Dkt. 164, 165).  On June 4, 2004, defendants'
counsel filed an objection to those two and all such pleadings
where E. Kincaid purported to act as attorney for her husband.
(Dkt. 166).  At the hearing on June 4, 2005, Judge McManus
dismissed AP 03-2260 with prejudice.  (Dkt. 167).  On September 7,
2004, Judge McManus issued an extensive memorandum decision (Dkt.
172) and an order (Dkt. 173) dismissing the adversary proceeding
(the "AP 03-2260 Dismissal Order").

On September 15, 2004, the Kincaids appealed the AP 03-2260

- 19 -

Dismissal Order to the BAP (the "Third Appeal"). (Dkt. 174). On
November 18, 2004, the second bankruptcy case and this adversary
proceeding were reassigned to Judge Jane McKeag as part of an
internal restructuring of the Sacramento Division. (Dkt. 183). On
November 5, 2004, the BAP denied the Kincaids' request for a stay
of the Third Appeal while they worked on the Second Appeal. The
Kincaids were ordered to complete the record on the Third Appeal.
On December 8, 2004, the BAP denied the Kincaids' motion for
reconsideration of the November 5, 2004 order and dismissed the
Third Appeal for failure to prefect the record. (Dkt. 188). No
notice of appeal of the December 8, 2004 BAP order appears in the
bankruptcy court's file. However, subsequent events show that it
was in fact further appealed to the 9th Circuit. On March 29,
2006, in two unpublished decisions, the 9th Circuit affirmed the
dismissal of the Third Appeal by the BAP. On June 30, 2006, the
bankruptcy court received from the BAP a copy of the Mandate from
the Ninth Circuit Court of Appeals. (Dkt. 192). The Third Appeal
is concluded and is not subject to further appellate review.


                    The Third Bankruptcy Case, No. 05-21390


        While the Second Appeal was pending and after several attempts
to stay the Case 01-22358 Dismissal Order in both the bankruptcy
court and the BAP had failed, the Kincaids filed their third
bankruptcy case (05-21390) as a skeleton chapter 13 in propria
persona on February 10, 2005. The filing of the third bankruptcy
case, the filing of E. Kincaid's individual fourth bankruptcy case

                                  - 20 -

1  (see below), and all actions taken in the third and fourth

2  bankruptcy cases, constitute a series of efforts to undo the AP 03-

3  2260 Dismissal Order and retain (or as subsequent events played

4  out, regain) ownership of their residence.  Undoing the AP 03-2260

5  Dismissal Order is critical to the Kincaids because that dismissal

6  leaves them without any ability to vindicate their belief that they

7  were "scammed" by the Mortgage Creditors and to eliminate their

8  debt to the Mortgage Creditors.

9       With the petition in the third bankruptcy case, the Kincaids

10 filed a document purporting to be a master address list.  It was

11 rejected because debtors only listed the creditors' names without

12 providing addresses.  The third bankruptcy case was assigned to

13 Department B (Judge McKeag) because by this time the second

14 bankruptcy case had been transferred to her.

15      <u>Mortgage Creditors' Motion for Dismissal of Case,</u>

16      <u>Conversion of the Case to Chapter 7 and Debtors' Motion</u>

17      <u>for Reconsideration and Fourth Appeal (February 2005 -</u>

18      <u>June 2005)</u>

19      On February 16, 2005, the Mortgage Creditors filed a motion to

20 dismiss the third bankruptcy case, seeking to do so on shortened

21 time.  (D.C. No. RCI-1, Dkt. 8, 10).  On February 25, 2005,

22 attorney Louis Perkins substituted into the case representing both

23 of the Kincaids.  Also on February 25, 2005, the Schedules,

24 Statement of Financial Affairs, a chapter 13 Plan, the Rights and

25 Responsibilities, and an amended master address list were filed.

26 On February 28, 2005, debtor E. Kincaid filed written opposition <u>in</u>

27 <u>propria persona</u> to the motion to dismiss the third bankruptcy case.

28                              - 21 -

On March 1, 2005, the date of the hearing on the motion to dismiss, E. Kincaid substituted Mr. Perkins out and represented herself in propria persona.  Judge McKeag took the dismissal motion under submission after the hearing on March 1, 2005.

On March 14, 2005, Judge McKeag issued her memorandum decision finding cause and converting this case to one under chapter 7. (Dkt. 34, 35).  An order (the "Third Bankruptcy Case Conversion Order") was entered the same day.  Susan Smith was appointed interim trustee.  On March 24, 2005, debtor J. Kincaid through his attorney filed his motion to reconsider the Third Bankruptcy Case Conversion Order.  (Dkt. 41).  The matter was not calendared because it was noticed for a non-calendar date.  J. Kincaid filed an amended notice of hearing on March 25, 2005.  On April 7, 2005, the Mortgage Creditors filed opposition to J. Kincaid's motion to reconsider.

Also on March 24, 2005, E. Kincaid filed her own motion to reconsider the Third Bankruptcy Case Conversion Order.  (Dkt. 47). It included a request for a stay of the Third Bankruptcy Case Conversion Order until the Second Appeal could be resolved.  The clerk issued a memorandum that it was not calendared because it did not have a notice of hearing.  On April 19, 2005, approximately one week before the hearing set for J. Kincaid's motion, E. Kincaid filed a notice of hearing calendaring her matter for April 27, 2005.  The morning of the hearing, E. Kincaid filed an 8 page memorandum of points and authorities and a 21 page "errata" replying to the opposition filed to J. Kincaid's motion.  (Dkt. 66, 67).

- 22 -

1   The only motion for reconsideration of the Third Bankruptcy

2   Case Conversion Order for which minutes appear on the docket is

3   that filed by J. Kincaid.  E. Kincaid appeared on his motion as

4   well.  It was denied by Judge McKeag by order entered April 29,

5   2005.  (Dkt. 70).  On April 28, 2005, E. Kincaid filed a motion to

6   have her motion for reconsideration of the Third Bankruptcy Case

7   Conversion Order heard on May 3, 2005.  (Dkt. 68).  On May 2, 2005,

8   Judge McKeag issued an order denying the request to hear the matter

9   on May 3, 2005, stating that the court had previously heard and

10  considered the motion on the merits.  (Dkt. 87)  On May 3, 2005, E.

11  Kincaid also filed an "Emergency Motion for Stay of Order Pending

12  Appeal."  (Dkt. 89).  That matter was calendared for June 1, 2006

13  and was denied by Judge McKeag on that date.  A Minute order to

14  that effect entered June 2, 2005.  (Dkt. 158).  On May 10, 2005, E.

15  Kincaid appealed the denial of her motion for reconsideration of

16  the Third Bankruptcy Case Conversion Order to the district court

17  (the "Fourth Appeal").  (Dkt. 95).  On May 12, 2005, in a document

18  written by E. Kincaid, J. Kincaid attempted to join the appeal.  On

19  May 12, 2005, J. Kincaid filed a motion to stay all matters in the

20  third bankruptcy case pending resolution of the Fourth Appeal.  The

21  motion was filed ex parte.  It was denied by Judge McKeag in an

22  order entered May 16, 2005 (Dkt. 107).  The Fourth Appeal was

23  dismissed by the District Court on June 15, 2006 for failure to

24  perfect the appeal (Dkt. 517).  On February 7, 2007 the Kincaids

25  appealed the dismissal of the Fourth Appeal to the Ninth Circuit

26  Court of Appeals.  On May 2, 2007, the Ninth Circuit Court of

27  Appeals issued a mandate dismissing the appeal for lack of

28

jurisdiction.

Trustee's Motions for Turnover, Accounting, Surcharge of
Homestead Exemption, and Sale of Residence  (April 2005 -
July 2005)

On April 29, 2005, the chapter 7 trustee in the third
bankruptcy case filed four motions: (1) motion for turnover of
debtors' residence (Dkt. 71); (2) motion for accounting and for
turnover of personal property (post-petition rents for rooms in the
residence) (Dkt. 75); (3) motion to surcharge debtors' homestead
exemption (Dkt. 79); and (4) motion to sell the residence,
comprised of two parcels of real property at 591 8Th Street and 805
F. Street in Sacramento (Dkt. 83).  All matters were set for June
1, 2005.  On May 18, 2005, each debtor filed separate oppositions
to each of the four motions.

Hearings on the four trustee motions took place on June 1,
2006..  Judge McKeag granted the motion for accounting and turnover
of personal property, but no order appears ever to have been
submitted.  (Dkt. 155).  Judge McKeag also granted the motion for
turnover of the residential real property, and an order to that
effect was entered on the docket July 11, 2005 (Dkt. 227).  Judge
Holman signed the latter order because Judge McKeag retired
effective July 5, 2005, and Judge Holman became the presiding judge
in Department B.

On July 18, 2005, E. Kincaid filed a motion to extend the
deadline to file a motion to vacate the July 11, 2005 order.  (Dkt.
255).  The matter was not set for hearing because E. Kincaid failed
to file a notice of hearing.  The clerk issued a memorandum to that

- 24 -

effect and placed a copy in the file.  On July 20, 2005, E. Kincaid filed a second motion to extend the deadline to file a motion to vacate the July 11, 2005 order.  (Dkt. 266).  The matter was not set for hearing because E. Kincaid attempted to set it on an incorrect date and time.  The clerk issued a memorandum to that effect and placed a copy in the file.

The surcharge and sale motions were continued to July 6, 2005. Judge Holman denied the motion to surcharge the Kincaids' homestead exemption because it sought to surcharge in an unknown amount.  An order denying the surcharge motion was entered July 13, 2005 (Dkt. 232).  The trustee filed an amended sale motion on June 8, 2005. It is discussed below.

<u>E. Kincaid's Motions to Disqualify Judge McKeag (May 2005)</u>

On May 18, 2005, E. Kincaid filed a motion to disqualify Judge McKeag (the "First McKeag Disqualification Motion")(Dkt. No. 126). E. Kincaid filed a request to shorten time so that the First McKeag Disqualification Motion could be heard on the June 1, 2005 calendar, the same calendar as the four Trustee motions described in the preceding section.  Judge McKeag denied the request for shortened time on May 23, 2005.  On May 27, 2005, E. Kincaid filed a motion to reconsider the denial of the May 23, 2005 order denying shortened time.  The motion to reconsider was filed <u>ex</u> <u>parte</u> and was not resolved prior to the June 1, 2005 hearing.

On May 31, 2005, E. Kincaid filed, <u>ex</u> <u>parte</u>, her second motion to disqualify Judge McKeag (the "Second McKeag disqualification Motion")(Dkt. 149).  The docket reflects no resolution of the Second McKeag Disqualification Motion.  However, the Second McKeag

Disqualification Motion is moot as a result of Judge McKeag's retirement on July 5, 2005 and the transfer of this case to Judge Holman on July 6, 2005.

### J. Kincaid's Attempt to Terminate Counsel (June 2005)

On June 2, 2005, J. Kincaid filed a document entitled "Termination of legal Representation of Attorney Louis J. Perkins" in which he stated that he terminated the legal representation of Mr. Perkins and adopted all actions taken by his wife as his own. (Dkt. No. 159). The document appears to be an attempt to effect the withdrawal of Mr. Perkins, leaving J. Kincaid in propria persona, but it did not comply with LBR 1001-1(c), incorporating L.R. 83-182(d), because the document was never filed as a noticed motion. No hearing on the matter was ever held, and no order was ever signed.

### Mortgage Creditors' Motion for Relief from the Automatic Stay (June 2005)

On June 7, 2005, the Mortgage Creditors filed a motion for relief from automatic stay and set it for hearing on July 6, 2005. (D.C. No. FWK-1, Dkt. 161). Trustee filed a non-opposition to the motion for relief from the automatic stay on June 14, 2005. J. Kincaid (through Mr. Perkins) filed opposition to the motion on June 21, 2005. E. Kincaid filed opposition one day late on June 23, 2005. Judge Holman denied the motion without prejudice on July 6, 2005 for procedural defects (Dkt. 208).

### Trustee's Amended Motion to Sell the Debtors' Residence, Attendant Motions for Reconsideration, and Debtors' Fifth Appeal (June 2005 - April 2006)

On June 8, 2005, trustee filed an amended motion to sell the Kincaids' residence. (D.C. No. DNL-5, Dkt. No. 169). J. Kincaid (through Mr. Perkins) filed opposition to the motion on June 21, 2005. E. Kincaid filed opposition one day late on June 23, 2005. On June 28, 2005, J. Kincaid filed a second declaration in propria persona opposing the sale motion. The trustee filed a supplemental declaration to the sale motion as directed on June 30. It detailed her investigation of another property owned by debtors and stated that she was not yet seeking its sale. On July 5, 2005, E. Kincaid filed a 124-page opposition to the sale motion. She filed another declaration the morning of the hearing on July 6, 2005. On July 6, 2005, the motion to sell debtors' residence was granted in part. The sale of the residence was approved, but the court declined to make a finding of good faith by the purchaser because no evidence had been presented on that issue (Dkt. 220). The court permitted the trustee to submit evidence supporting a finding of good faith with a proposed order approving the sale of the residence. An order granting the sale motion in part was entered July 12, 2005 (the "July 12, 2005 Sale Order")(Dkt. 230). The July 12, 2005 Sale Order permitted trustee to retain $50,000 (reduced from $100,000 requested by the trustee) of debtors' homestead exemption pending a trustee motion to surcharge the exemption. Also on July 12, 2005, an order denying trustee's request for a finding of good faith under 11 U.S.C. § 363(m) was entered. (Dkt. 231). The evidence submitted by the trustee had not been served on anyone, and it neither addressed the applicable legal standard nor stated specific facts to meet that standard. On July 20, 2005, E. Kincaid filed a

motion to extend the deadline to file a motion to vacate the July 12, 2005 Sale Order. (Dkt. 266). The matter was not set for hearing because E. Kincaid failed to file a notice of hearing. The clerk issued a memorandum to that effect and placed a copy in the file.

On July 19, 2005, the trustee filed a motion to reconsider the order denying the good faith finding. (D.C. No. DNL-7, Dkt. 259). The court held an initial hearing on September 7, 2005. The hearing was continued to September 20, 2005 solely because E. Kincaid requested the continuance and stated an intention to retain counsel. The minutes reflect that the evidentiary record was closed. On September 19, 2005 at 3:09 p.m. in violation of the court's order closing the evidentiary record, E. Kincaid filed a 6 page declaration with 19 pages of exhibits. (Dkt. 314). At the September 20, 2005 hearing E. Kincaid appeared without counsel. The trustee's motion for reconsideration was granted by order entered September 27, 2005. On October 3, 2005, E. Kincaid filed a motion to reconsider the September 27, 2005 order. The matter was originally calendared for November 15, 2005. The court continued the matter to December 20, 2005 so that it could resolve three motions to disqualify Judge Holman filed by E. Kincaid (two in this case and one in E. Kincaid's subsequent chapter 13 case). On December 20, 2005, Judge Holman denied the disqualification motions. (Dkt. 386, 387). Judge Holman also denied E. Kincaid's motion for reconsideration of the September 27, 2005 order by order entered December 23, 2005. (Dkt. 385). Judge Holman also denied the trustee's motion for reconsideration on December 23, 2005.

- 28 -

1    (Dkt. 389).

2        On December 30, 2005, E. Kincaid filed a motion to reconsider

3    the December 23, 2005 order denying the prior motion to reconsider.

4    (Dkt. 394).  She set the matter on calendar for January 31, 2006.

5    That initial hearing was continued to February 14, 2006 at E.

6    Kincaid's request so that the attorney who drafted the motion could

7    appear and argue it.  An attorney did appear for E. Kincaid on that

8    date but he argued the other matter on calendar and specifically

9    declined to argue the motion for reconsideration.  Judge Holman

10   denied the motion by order entered February 21, 2006.  On February

11   27, 2006, Mrs Kincaid filed a motion to reconsider the February 21,

12   2006 order.  The matter was not initially set for hearing because

13   E. Kincaid failed to file a notice of hearing.  The clerk issued a

14   memorandum to that effect and placed a copy in the file.  On March

15   7, 2006, E. Kincaid filed a notice of hearing setting the matter

16   for hearing on April 4, 2006.  Judge Holman denied the motion by

17   order entered April 7, 2006.  On April 17, 2006, E. Kincaid

18   appealed the April 7, 2006 order to the District Court (the "Fifth

19   Appeal").  That appeal remains pending.

20        Attorney Louis Perkins' Withdrawal as Counsel for J.

21        Kincaid (D.C. No. LJP-3, June 2005 - July 2005)

22        On June 14, 2005, attorney Louis Perkins filed a motion to

23   withdraw as counsel for J. Kincaid.  (D.C. No. LJP-3, Dkt. 179)

24   Judge Holman granted the motion on July 22, 2005.  Mr. Perkins has

25   not yet submitted an order after hearing.  On July 5, 2005, the

26   Kincaids received their chapter 7 discharge.

27

28
                                - 29 -

1    <u>Debtors' Motion to Reconvert Case to Chapter 13 (July 2005)</u>

2    On July 7, 2005, the Kincaids filed an emergency application

3    to reconvert to chapter 13.  (Dkt. 205).  The Kincaids did not set

4    the matter for hearing (which was required because the case had

5    previously been converted from chapter 13).  Also on July 7, 2005,

6    the Kincaids filed another Emergency motion for stay of order

7    pending appeal.  (Dkt. 210).  But for some small changes it is an

8    exact copy of the motion filed May 3, 2005.  The Kincaids attempted

9    to white out or erase the "original filed" stamp on their copy from

10   May 3, 2005 and re-file the motion.  The Kincaids attempted to set

11   the motion on five days notice on the July 12 calendar.  Judge

12   Holman issued an order setting the matter on July 15, 2005.  (Dkt.

13   225).  Several creditors filed a joint opposition to the motion.

14   The trustee also opposed.  Judge Holman took the matter under

15   submission after the hearing on July 15, 2005.  A memorandum

16   decision and order denying the motion issued on that date.  (Dkt.

17   247, 248).

18   <u>Trustee's Motion for Approval of Compromise with Mortgage</u>

19   <u>Creditors, Debtors' Motion for Reconsideration, and</u>

20   <u>Seventh Appeal (August 2005- July 2006)</u>

21   On August 4, 2005, the trustee filed a motion to approve a

22   compromise between herself and the Mortgage Creditors.  (D.C. No.

23   DNL-8, Dkt. No. 275).  The proposed settlement called for the

24   Mortgage Creditors to reduce the attorney's fees portion of their

25   claim by $20,000, resulting in monies coming into the estate, in

26   exchange for the trustee seeking to dismiss the Second Appeal and

27   the Third Appeal.  Each appeal was property of this third

28

1  bankruptcy case.  The matter was set for hearing on September 7,

2  2005.  The debtors filed opposition August 25, 2005.  On September

3  7, 2005, the matter was continued to October 4, 2005 because

4  trustee wanted to modify the relief sought.  The court required the

5  changes be noticed to debtors and the creditors of the estate.

6  Trustee timely filed and served the amended motion.  The matter was

7  continued again to November 1, 2005 because trustee had not yet

8  obtained all necessary signatures on the settlement agreement.  The

9  matter was continued a third time to December 20, 2005 because in

10  the interim, the Kincaids had filed their first two motions to

11  disqualify Judge Holman.  The court believed it should resolve

12  those motions before reaching the merits of the motion to approve

13  the proposed compromise.  After Judge Holman denied the

14  disqualification motions on December 20, 2005, Judge Holman granted

15  the compromise motion by order entered February 6, 2006.  (Dkt.

16  425).  On February 17, 2006, the court entered an amended order on

17  the compromise to correct a clerical error.  The court did so

18  pursuant to Federal Rule of Bankruptcy Procedure 9024 incorporating

19  Federal Rule of Civil Procedure 60(a).

20      Unfortunately, the amended compromise order itself was

21  incomplete.  A creditor had failed to include an exhibit to the

22  settlement agreement that listed all of the parties to the

23  settlement.  A second motion to alter or amend the compromise order

24  was filed February 27, 2006.  Judge Holman granted the second

25  motion at a hearing held April 4, 2006.  The minute order granting

26  the motion to amend was entered April 7, 2006.  (Dkt. 487).  The

27  second amended order itself has not yet been submitted by counsel

28

- 31 -

as directed by the court's April 7, 2006 minute order.

On April 17, 2006, the Kincaids filed a motion for reconsideration of the April 7, 2006 order (Dkt. 495), setting the matter for hearing on June 20, 2006.  At the hearing on June 20, 2006, the court took the matter under submission.  (Dkt. 519).  On July 18, 2006 the court issued a memorandum decision and entered an order denying the motion to reconsider.  (Dkt. 522, 523).

On July 27, 2006, the debtors filed a notice of appeal from the July 18, 2006 order (the "Seventh Appeal").  That appeal, no. 06-CV-01683, was dismissed on January 24, 2007 due to the debtors' failure to perfect the appeal.  (Dkt. 596).

Trustee's First Motion for Reimbursement and Motion to Clean Up Real Property in Penryn and Debtors' Motions for Reconsideration (August 2005 - March 2006)

On August 23, 2005, the trustee filed a motion seeking authority to (1) reimburse herself from the estate for monies expended to insure debtors' residence pending sale by the estate; (2) use up to $10,000 in estate funds to insure and clean up real property of the estate located in Penryn California; and (3) abandon certain personal property stored on the Penryn property that the trustee found to be burdensome and that the debtors or rightful owners would not claim and take away.  (D.C. No. DNL-9, Dkt. 285).  The matter was set for hearing on September 20, 2005. The Kincaids filed opposition September 7, 2005.  After hearing, Judge Holman granted the motion in part and denied it in part.  The first request was denied without prejudice for lack of evidence that trustee had advanced the funds.  The second request was

granted.  The third request was granted in part only to the
specific items of personal property listed in the motion.  An order
reflecting the court's rulings was entered September 27, 2005.
(Dkt. 325).

On October 6, 2005, the Kincaids filed a motion to reconsider
the September 27, 2005 order.  (Dkt. 341).  The motion only
addressed the second request in the trustee's original motion:
permission to use estate funds to insure and clean up the Penryn
property.  The matter was not initially set for hearing because E.
Kincaid failed to file a notice of hearing.  The clerk issued a
memorandum to that effect and placed a copy in the file.  On
November 23, 2005, E. Kincaid filed a notice of hearing setting the
matter for hearing on December 20, 2005.  After the Kincaids' first
two motions to disqualify Judge Holman were denied, the motion to
reconsider was continued to January 18, 2006.  The Kincaids had
raised a potentially meritorious argument that required the
submission of evidence: i.e. if sale the Penryn property was
unnecessary to satisfy estate claims, then expenditure of monies to
clean it up would be unnecessary.  The court requested further
evidence as to the financial condition of the estate.  Trustee
filed her declaration on December 29, 2005.  Debtors filed further
opposition on January 11, 2006.  The debtors motion was denied on
January 18, 2006 because trustee showed that sale of the Penryn
property was necessary to pay all administrative and other claims
against the estate.  An order denying the motion was entered
January 24, 2006.  (Dkt. 414).

On February 2, 2006, E. Kincaid filed a motion to reconsider

- 33 -

the January 24, 2006 order.  The only grounds claimed were that
Judge Holman was biased against the Kincaids and should be
disqualified.  Judge Holman denied the motion by order entered
March 14, 2006.  This order was not appealed.

   Debtors' Motion to Dismiss Case (August 2005 - December 2005)

     As is more fully detailed below, on July 20, 2005, E. Kincaid
filed individually a fourth bankruptcy case.  On August 30, 2005,
the Kincaids filed a motion to dismiss the third bankruptcy case.
(Dkt. 294).  Their motion operated under the mistaken assumption
that the filing of the fourth bankruptcy case divested the
bankruptcy estate in the third bankruptcy case of the Kincaids'
assets.  Judge Holman denied the motion for lack of cause by order
entered September 27, 2005.  (Dkt. 323).

     On October 6, 2005, the Kincaids filed a motion to reconsider
the September 27, 2005 order.  (Dkt. 340).  The matter was not
initially set for hearing because E. Kincaid failed to file a
notice of hearing.  The clerk issued a memorandum to that effect
and placed a copy in the file.  On November 23, 2005, E. Kincaid
filed a notice of hearing setting the matter for hearing on
December 20, 2005.  After Judge Holman denied the Kincaids' First
Holman Disqualification Motion and the Second Holman
Disqualification Motion, Judge Holman also denied the motion to
reconsider the September 27, 2005 order.  The Kincaids were still
operating under the erroneous belief that the filing of the fourth
bankruptcy case divested the bankruptcy estate in the third
bankruptcy case of the Kincaids' property.  The Kincaids still had
not shown cause to dismiss.  An order denying the motion to

- 34 -

reconsider the September 27, 2005 order was entered December 23, 2005.  (Dkt. 385).  The order was not appealed.

Debtors' First Motion to Disqualify Judge Holman

(October 2005 - December 2005)

On October 4, 2005, the Kincaids filed their first motion to disqualify Judge Holman (the "First Holman Disqualification Motion").  (Dkt. 337).  The first hearing on the First Holman Disqualification Motion was held on November 1, 2005 (Dkt. 352), and the matter was continued to December 20, 2005 at the request of the debtor and over the objection of the trustee.  Judge Holman denied the First Holman Disqualification Motion at a hearing held December 20, 2005 (Dkt. 382) and by order entered December 23, 2005.  (Dkt. 387).

Debtors' Second Motion to Disqualify Judge Holman

(November 2005 - December 2005)

On November 15, 2005, the debtors filed their second motion to disqualify Judge Holman (the "Second Holman Disqualification Motion").  (Dkt. 362).  The Second Holman Disqualification Motion was filed before the First Disqualification Motion had been resolved.  Judge Holman denied the Second Holman Disqualification Motion at a hearing held December 20, 2005 (Dkt. 380) and by order entered December 23, 2005 (Dkt. 386).

Trustee's Second Motion for Reimbursement (October 2005 - February 2006)

On October 18, 2005, the trustee filed her second attempt to obtain reimbursement from the estate for monies advanced for insurance and other expenses.  (D.C. No. DNL-11, Dkt. 342).  The

matter was set for November 15, 2006.  Due to an error in the
clerk's office, the matter was not placed on Judge Holman's
calendar.  On December 1, 2006, J. Kincaid filed written opposition
to the motion.  The trustee filed and served an amended notice of
hearing on December 29, 2005 setting the matter on the court's
January 18, 2006 calendar.  On January 11, 2006, the Kincaids filed
a joint opposition to the motion.  The matter was continued from
January 18, 2006 to February 14, 2006 because the Kincaids had
raised a potentially meritorious argument - that the insurance
purchased by the trustee was unnecessary because the Kincaids had
already insured the real properties.  Judge Holman ordered further
briefing.   On February 14, 2006, Judge Holman granted the motion
in part finding that the insurance the Kincaids claimed was on the
real property was forced placed by their lenders and only covered
the amount of the lenders' debt.  That insurance did not protect
the estate's (and the Kincaids') interests.  Thus the expenses
incurred by the trustee were reasonable and necessary to protect
and preserve the bankruptcy estate.  An order granting the motion
was entered February 21, 2006.  (Dkt. 439).  The order was not
appealed.

>    Financial Title Company's Motion to Return Funds to the
>    Estate (November 2005 - December 2005)

On November 4, 2005, Financial Title Company ("FTC"), the
title and escrow company used by trustee in the sale of debtors'
residence, filed a ex parte motion to return the balance of
debtors' homestead exemption amount ($100,000) that it held.  (Dkt.
353).  FTC asserted that the Kincaids had refused to accept payment

of the funds.  FTC requested authority to return the funds to the
estate so that the escrow could finally close.  By order entered
November 14, 2005, Judge Holman set the matter for hearing on
December 20, 2005.  The trustee filed a non-opposition on November
22, 2005.  The Kincaids did not file opposition.  After Judge
Holman denied the First Holman Disqualification Motion and the
Second Holman Disqualification Motion, Judge Holman granted the FTC
motion by order entered December 23, 2005.  (Dkt. 388).

<u>Trustee's Employment of Accountant for the Estate and</u>
<u>Debtors' Motion to Vacate (January 2006 - March 2006)</u>

On January 9, 2006, the trustee filed an application to employ
Gene A. Gonzales as the estate's accountant.  (Dkt. 396).  In
accordance with the Federal Rules of Bankruptcy Procedure and the
U.S. trustee Guidelines, the application and a proposed order were
served on the U.S trustee.  The U.S. trustee did not oppose the
appointment and the court entered an order approving Mr. Gonzales'
employment on January 23, 2006.

On January 30, 2006, the Kincaids filed a motion to vacate the
January 23, 2006 order.  (Dkt. 416).  They argued that their due
process rights had been violated because they were not served with
the application and no hearing was held.  Judge Holman denied the
motion to vacate by order entered March 14, 2006.  As discussed in
the ruling issued on March 7, 2006, the Kincaids' rights were not
violated because the Federal Rules of Bankruptcy Procedure do not
require service of employment applications on the debtors.  Nor is
there a requirement that the court hold a hearing.  The request is
made by application and not by motion.  Bankruptcy Rules 9013 and

- 37 -

9014 do not apply.  This order was not appealed.

Debtors' Third Motion to Disqualify Judge Holman

(January 2006 - February 2006)

On January 31, 2006, in the third bankruptcy case, the Kincaids filed their third motion to disqualify Judge Holman (the "Third Holman Disqualification Motion").  (Dkt. 418).  The Kincaids failed to file a notice of hearing with the motion but attempted to have the matter heard and decided at a hearing on their motion to reconsider the order granting the trustee's motion to reconsider the order denying a finding of good faith in connection with the sale of the Kincaids' residence.  The court continued the Kincaids' motion to reconsider and the Third Holman Disqualification Motion to February 14, 2006.  (Dkt. 431).  Judge Holman denied the Third Holman Disqualification Motion by order entered February 21, 2006. (Dkt. 439).

Debtors' Fourth Motion to Disqualify Judge Holman, Motion

to Reconsider, and Sixth and Eighth Appeals (March 2006 -

July 2006)

On March 7, 2006, the Kincaids filed their fourth motion to disqualify Judge Holman (the "Fourth Holman Disqualification Motion"), entitled "Emergency Motion for Full Retroactive Disqualification of Judge and for Recusal of Judge to Hear Instant Matter and All Subsequent Hearing of All Pro Se Debtors Kincaids' Cases and Vacatur of All Prior Orders/Acts and All Subsequent Acts/Orders of Judge to Protect Kincaids' Right to an Impartial Adjudication."  (Dkt. 453) Judge Holman denied the Fourth Holman Disqualification Motion at a hearing held April 4, 2006 (Dkt. 478)

- 38 -

and by order entered April 7, 2006 (Dkt. 485).

On April 17, 2006, the Kincaids filed a motion to reconsider the April 7, 2006 order. (Dkt. 497). The Kincaids set the matter for hearing on June 20, 2006. On June 20, 2006, the morning of the hearing, the debtors filed a motion for continuance of the hearing. (Dkt. 516). The motion for continuance was denied and, after the hearing on June 20, 2006, the court took the matter under submission. On July 17, 2006, the court issued a memorandum decision on the matter and entered an order denying the motion to reconsider. (Dkt. 520, 521).

On July 27, 2006 the Kincaids filed a notice of appeal from the July 17, 2006 order (the "Sixth Appeal"). (Dkt. 524). They elected to have the appeal heard by the District Court. (Dkt. 525). The Sixth Appeal, no. 06-CV-01682, remains pending. The Kincaids also filed on July 27, 2006 a notice of appeal from the denial of their motion to continue the June 20, 2006 hearing (the "Eighth Appeal"). (Dkt. 530). That appeal, no. 06-CV-01684, also remains pending.

### Debtors' Former Counsel's Application for Compensation (March 2006 - April 2006)

On March 17, 2006, the Kincaids' former counsel, Louis Perkins, filed an application for compensation. (D.C. No. LJP-4, Dkt. 462). Counsel sought attorney's fees in the amount of $21,390.64. The application was set for hearing on April 18, 2006. On April 4, 2006, the U.S. trustee filed opposition. On April 5, 2006, one day late, the Kincaids also filed opposition. On April 14, 2006 the debtors filed a "Correction to Opposition." At a

- 39 -

1  hearing held April 18, 2006, the debtors' opposition was overruled

2  without prejudice.    The U.S. trustee's opposition was sustained in

3  part.    The court approved fees and costs totaling $5,015.12.    The

4  vast majority of the fees were not compensable from the estate

5  under the U.S. Supreme Court's decision in <u>Lamie v. U.S. Trustee</u>,

6  540 U.S. 526, 124 S.Ct. 1023 (2004).    An order approving the

7  reduced fees was entered April 21, 2006.    (Dkt. 504).

8       <u>J. Kincaid's Filing of Power of Attorney (May 2006)</u>

9       On May 3, 2006, J. Kincaid filed a handwritten power of

10  attorney designating E. Kincaid as his attorney in fact.    (Dkt.

11  510).    On May 11, 2006, the clerk issued a memorandum noting that

12  the document purported to apply to all cases filed by the Kincaids

13  but was only filed in the third bankruptcy case, and to the extent

14  that the Kincaids wished the power of attorney to apply in other

15  cases, a copy must be filed in those cases.    The court notes that

16  the power of attorney has limited efficacy.    While it permits E.

17  Kincaid to sign documents on behalf of her husband and to bind him

18  to the outcome thereof, it does not permit her to appear on behalf

19  of her husband in this court.    28 U.S.C. Section 1654 provides: "In

20  all courts of the United States the parties may plead and conduct

21  their own cases personally or by counsel as, by the rules of such

22  courts, respectively, are permitted to manage and conduct causes

23  therein." (West 2005).    The District Court for the Eastern District

24  of Calfornia has adopted L.R. 83-183: "Any individual who is

25  representing himself or herself without an attorney must appear

26  personally or by courtesy appearance by an attorney admitted to the

27  Bar of this Court and may not delegate that duty to any other

28                                   - 40 -

individual, including husband or wife, or any other party on the same side appearing without an attorney." That Local Rule is made applicable in this court by Local bankruptcy Rule 1001-1(c). See also C.E. Pope Equity Trust v. U.S., 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona, in his own behalf, that privilege is personal to him. [citation]. He has no authority to appear as an attorney for others than himself.") and Russell v. U.S., 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself."). See also Lewis v. Lenc-Smith Mfg. Co., 784 F.2d 829 (7th Cir. 1986); Georgiades v. Martin-Trigona, 729 F.2d 831, 834 (D.C. Cir. 1984); and Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982).

### Sale of the Penryn Property and Debtors' Motion to Reconsider (October 2006 - January 2007)

On October 10, 2006, the trustee filed a motion to sell real property of the estate located in Penryn, California (the "Penryn Property") (Dkt. 553), setting the matter for hearing on November 7, 2006. The court held a hearing on November 7, 2006, Judge Holman granted the motion to sell and an order granting the motion was entered on November 14, 2006. (Dkt. 568).

On November 27, 2006 the Kincaids filed a motion to reconsider the November 14, 2006 order authorizing the sale of the Penryn Property (Dkt. 577), setting the matter for hearing on January 23, 2007. Judge Holman denied the motion to reconsider, and an order denying the motion was entered on January 30, 2007. (Dkt. 599).

Debtors' Motion to Remove the Trustee and Trustee's
Counsel and Motion to Reconsider (October 2006 - May
2007)

On October 30, 2006, the Kincaids filed a motion to remove the
trustee and her counsel from the case.  (Dkt. 557).  The Kincaids
also filed an application to have the matters heard on shortened
time, attempting to set them for hearing on November 7, 2006.
(Dkt. 556).  The application for an order shortening time was
denied by order entered November 1, 2006.  (Dkt. 559).  The
Kincaids filed an amended notice of hearing on November 14, 2006
(Dkt. 570), attempting to re-set the matter for hearing on December
12, 2006 at 9:00 a.m.  On November 17, 2006, the Bankruptcy Court
Clerk's office issued a memorandum stating that the matter would
not be calendared because the time of the hearing stated in the
amended notice of hearing was not a standard time for the court's
law and motion calendar.  (Dkt. 574).  On November 29, 2006 the
debtors filed an amended notice of hearing re-setting the motion
for hearing on January 9, 2007.  (Dkt. 583).  The trustee filed
opposition to the motion on November 28, 2006.  At the hearing on
January 9, 2007 the court continued the motion to January 23, 2007
to be heard with the debtors' motion for reconsideration of the
order authorizing the sale of the Penryn Property.  (Dkt. 592).  On
January 23, 2007, Judge Holman denied the motion, and an order
denying the motion was entered January 30, 2007.  (Dkt. 597).

On February 8, 2007, the debtors filed a motion to reconsider
the January 30, 2007 order, (Dkt. 606), setting the matter for
hearing on April 17, 2007.  The trustee filed written opposition on

February 21, 2007.  At the hearing on April 17, 2007 the court took
the matter under submission.  Judge Holman's decision denying the
motion is issued concurrently with this decision.

Debtors' Motion for Emergency Stay Pending Appeal and

Recusal of Judge (March 2007 - May 2007).

On March 20, 2007, the Kincaids filed the instant motion,
motion entitled "Emergency Amended Motion for Stay Pending Appeal
(Originally Filed and Served Ex Parte On or About Nov. 7 2006 But
Never Addressed by This Court) or, In the Alternative, Urgent
Request to Recuse Judge Pursuant to 28 U.S.C. § 455(a) to Hear
April 17, 2007 Hearing and Subsequent Hearings."  (Dkt. 614).  The
debtors set the matter for hearing on April 17, 2007.  The trustee
filed written opposition on April 3, 2007.  The court took the
matter under submission on April 17, 2007.  This memorandum
addresses and denies the motion.

The court notes that prior to filing the motion for stay
pending appeal addressed by this memorandum, the Kincaids
previously filed another application for a stay pending appeal on
November 6, 2006.  (Dkt. 565).  However, as that motion was filed
ex parte with no notice of hearing, the court did not consider the
motion and did not rule on it.


The Fourth Bankruptcy Case, No. 05-28841


As previously noted, debtor E. Kincaid filed a fourth
bankruptcy case on July 20, 2005 under chapter 13.  She did so in
propria persona.  The filing was a skeleton consisting of the two-

- 43 -

page petition and a handwritten list of creditors, without

addresses, serving as the master address list.  The case was

initially assigned to Judge Robert Bardwil, but on July 26, 2006,

an order was entered transferring the case to Judge Holman in

Department B.  The transfer occurred because all of E. Kincaid's

other cases were then pending in Department B.

Chapter 7 Trustee's Motion to Dismiss

On July 22, 2005, Susan Smith, the trustee in the Kincaids'

third Bankruptcy (05-21390) filed a motion seeking both to dismiss

the fourth bankruptcy case and alternatively for relief from the

automatic stay.  (Dkt. 8).  Trustee Smith alleged that the fourth

bankruptcy case was not viable because it lacked an estate to

reorganize (all property still being property of the third

bankruptcy estate) and that the sole purpose for the later filing

was to hinder trustee's administration of the debtor's residence.

Trustee Smith further requested that her motion be heard on

shortened time.  On July 26, 2005, Judge Holman ordered shortened

time.  E. Kincaid filed opposition on July 27, 2005.  The title

stated it was to the request to shorten time but the substance of

the opposition addressed the merits of the underlying motion as

well.  On August 9, 2005, Judge Holman granted the motion for

relief from the automatic stay but denied the motion to dismiss

without prejudice.  An order to that effect was entered August 11,

2005..  (Dkt. 36).

Debtors' Chapter 13 Plan

On August 4, 2006, E. Kincaid filed in the fourth bankruptcy

case her chapter 13 plan, her Schedules, and the Statement of

- 44 -

Financial Affairs.  (Dkt. 30, 31).  The Statement of Financial
Affairs was signed at the end but was blank other than the pre-
printed language of the form itself.  The plan was unconfirmable.
It provided for $2,040 per month plan payments that were not
supported by Schedules I and J.  It provided for an undefined plan
term of "until the US Court of Appeals for the Ninth Circuit has
rendered a decision toward resolution of the core issue of
disallowance or allowance of creditor Red Shield Servicing, Inc,.
et. al.'s secured claims which has been pending in such court since
Jan. of this year. (Sic)"  The plan proposed no dividend to Class 7
(general unsecured) claims.  It also presumed that E. Kincaid would
prevail on her appeal as it provided for no treatment should the
secured claim remain in the case.

E. Kincaid's Ex-Parte Motion for Injunctive Relief

On August 11, 2005, in the fourth bankruptcy case, E. Kincaid
filed an ex parte motion seeking an injunction against trustee
Smith in order to halt the sale of E. Kincaid's residence in the
third bankruptcy case.  (Dkt. 37).  On August 12, 2006 (order
entered August 16, 2006), Judge Holman denied the ex parte motion
because (1) it sought relief for which an adversary proceeding is
required under Fed. R. Bankr. P. 7001(7); (2) there was no
compliance with Fed. R. Bankr. P. 7065 incorporating Fed. R. Civ.
P. 65(b) as to notice; and (3) there was no showing of irreparable
injury as the property to be sold was not property of the chapter
13 estate.  (Dkt. 40).  Although the ex parte motion had been
denied, E. Kincaid submitted a declaration on August 15, 2005 in
support of it.

E. Kincaid's Motions for Reconsideration

On August 22, 2005, E. Kincaid filed two motions to reconsider both .(1) the order granting relief from the automatic stay to trustee Smith and (2) the ·order denying her ex parte motion for injunctive relief.  (Dkt. 44, 49).  Both matters came on for hearing on September 27, 2005.  Judge Holman denied both motions because E. Kincaid had failed to set forth any grounds to set aside the two orders.  In each case, E. Kincaid stated that the purpose of the fourth bankruptcy case was to save her home.  The court explained in its rulings that this case could not fulfill that purpose because the subsequent filing did not divest the chapter 7 estate in the third bankruptcy case of that estate's property.

Chapter 13 Trustee's Motion to Dismiss, E. Kincaid's

Fifth Motion to Disqualify Judge Holman, and Motion for

Reconsideration

On August 25, 2005, the trustee held and concluded the meeting of creditors in the fourth bankruptcy case.  His report indicated that he did not recommend confirmation of the debtor's chapter 13 plan and would be filing a motion to dismiss the case.  The trustee filed his motion to dismiss on September 27, 2005.  (Dkt. 55).  The motion alleged that E. Kincaid was delinquent two plan payments and that there was nothing to rehabilitate as the secured creditors would be paid in full through the pending sale in the debtor's chapter 7 case.  The matter was originally set for October 26, 2005.  However, at or about the time the calendar commenced, E. Kincaid filed an "Urgent Request to Disqualify Judge under 28 U.S.C. § 455 to hear Motion to Dismiss Above Action" (the "Fifth

- 46 -

Holman Disqualification Motion"). (Dkt. 68). The debtor's "urgent request" was essentially identical to the First Holman Disqualification Motion filed in the third bankruptcy case on October 4, 2005. The motion to dismiss was continued to November 23, 2005 and December 20, 2005 at which hearing the court consolidated all Kincaid motions from her second, third and fourth bankruptcy cases. Judge Holman denied all of the disqualification motions, thereafter Judge Holman granted the trustee's motion to dismiss the fourth bankruptcy case pursuant to 11 U.S.C. § 1307(c)(1) and (c)(4). An order granting the motion to dismiss was entered December 22, 2005. (Dkt. 72).

On January 3, 2006, E. Kincaid filed a motion to reconsider the December 22, 2005 order dismissing the fourth bankruptcy case. (Dkt. 75). The motion contained several misstatements of law and fact. The first argument was that "this is the first time pro se debtor has seen this motion." Given the fact that E. Kincaid appeared at the initial October 26, 2005 hearing on the motion to dismiss and informed the court of the filing of her motion to disqualify, her statement that "this is the first time that [she] had seen the motion" is at the very least questionable. First, the chapter 13 trustee's proof of service for the motion shows service on E. Kincaid at the address listed for her in the petition commencing the fourth bankruptcy case. Second, chapter 13 dismissal calendars are held only once a month on a day and at a time when no other chapter 13 matters are heard. There was no other reason for E. Kincaid to appear before Judge Holman on October 26, 2005. But for her receipt of the motion, she would not

- 47 -

have known to appear on the dismissal calendar.  The motion to reconsider the December 22, 2005 dismissal order was not initially set for hearing because E. Kincaid failed to file a notice of hearing.  The clerk issued a memorandum to that effect and placed a copy in the file.  Not realizing the matter had not yet been set for hearing, chapter 7 trustee Smith filed opposition on January 10, 2006 and chapter 13 trustee Johnson filed opposition on January 13, 2006.  Trustee Smith's opposition was a statement that debtor had submitted no credible relevant evidence supporting her motion to reconsider.  Trustee Johnson's opposition was more specific.  He argued that debtor had still not made any plan payments and stated his contention that the fourth bankruptcy case was filed solely "to hinder and delay the chapter 7 trustee's actions in the related chapter 7 case."  (Dkt. 81 at 1).  He further argued that debtor's allegations of non-receipt of the motion lacked merit as it was properly served on her last known address as shown in the court's file.  (Dkt. 81 at 2).  On January 25, 2006, E. Kincaid filed a notice of hearing attempting to set the matter for hearing on January 31, 2006.  The motion for reconsideration of the December 22, 2005 dismissal order was not set for hearing because the date chosen E. Kincaid was not one on which the court heard chapter 13 matters.  The clerk issued a memorandum to that effect and placed a copy in the file.  E. Kincaid made no further attempts to calendar the motion.

Chapter 13 Trustee's Final Report and Account and Closing of the Fourth Case

On January 26, 2006, the chapter 13 trustee issued his final

1  report and account.   (Dkt. 84).   No opposition was filed to it

2  within the deadline set forth in the document itself.   On March 1,

3  2006, the order approving the final report and account was entered.

4  On March 7, 2006, the fourth bankruptcy case was closed.   (Dkt.

5  89).

6

7                              DISCUSSION

8

9        By the present motion the debtors seek alternative forms of

10  relief.

11        First they seek a stay of the court's order denying their

12  motion for reconsideration of the court's order denying the Fourth

13  Holman Disqualification Motion.   The order denying the Fourth

14  Holman Disqualification Motion was entered on April 7, 2006 (Dkt.

15  485), more than one year before the hearing on this motion.   The

16  memorandum opinion and order denying the motion to reconsider the

17  order denying the Fourth Holman Disqualification Motion were

18  entered on July 17, 2006 (Dkt. 520, 521), nine months before the

19  hearing on this motion.

20        Second, and alternatively, by this motion the debtors seek the

21  recusal of Judge Holman (the "Sixth Holman Disqualification

22  Motion") pursuant to 28 U.S.C. § 455(a) from hearing this motion

23  and all concurrent and subsequent motions.

24        The debtors' objective in the present motion is clear: they do

25  not want Judge Holman to preside over this case.   The basis for the

26  motion is also clear: they believe that they "are likely to prevail

27  if the judge is fair and neutral."   (Dkt. 618 at 2-3).   In other

28                              - 49 -

words, the debtors argue that if the judge were fair and neutral,
they would receive what they consider to be favorable rulings;
since they have not received what they consider to be favorable
rulings, the judge is not fair and neutral.  The motion, however,
fails to set forth any legal or factual basis for granting either
form of requested relief.

The Request For Recusal

Because the motion requests Judge Holman's recusal from
hearing this motion and all concurrent and subsequent motions, the
court will first consider this request.

The Kincaids argue that they harbor doubts concerning Judge
Holman's impartiality and that the record in this case when viewed
objectively supports the appearance of prejudice or bias.  (Dkt.
614 at 2-3).  They argue that any remedy they will obtain through
their appeal will be inadequate, and that the Judge Holman must
immediately recuse himself.  (Dkt 614 at 3).

The court notes, as set forth in detail in the procedural
history above, that this is the Kincaids' sixth request for Judge
Holman's recusal or disqualification.  The Kincaids also made two
motions seeking Judge McKeag's disqualification while she presided
over this case.

The court construes the instant request for recusal as either
(1) a second request for reconsideration of the court's April 7,
2006 order (Dkt. 485) denying the Fourth Holman Disqualification
Motion; or (2) a request for recusal based on events occurring
after the entry of the April 7, 2006 order.  The court considers
each of these alternatives in ruling on the request.

To the extent the instant request for recusal is construed as a second motion to reconsider the April 7, 2006 order, the court notes that on July 27, 2006, the Kincaids filed a notice of appeal from the denial of their first motion to reconsider the April 7, 2006 order. As a result, the court does not have subject matter jurisdiction to reconsider its prior order or to revisit the issue of whether recusal is appropriate. "Even though a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal." In re Bialac, 694 F.2d 625, 626 (9th Cir. 1982). Thus, because the issue of Judge Holman's impartiality in this case based on events occurring prior to April 7, 2006 is currently the subject of a pending appeal, the court cannot reach the debtors' request to reconsider here. At some point, the decision of the trial court must be final, and the Kincaids must seek relief by way of appeal. The Kincaids have done so. That order cannot now be changed by this court.

To the extent that the instant request for recusal is construed as a request based on facts arising since April 7, 2006, the request is denied. The Kincaids have not satisfied the standard for recusal or disqualification of Judge Holman from this case. Disqualification is governed by Fed. R. Bankr. P. 5004. Rule 5004(a) states "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case." (West 2005). Section 455 states in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;...

(West 2005)

"A judge is presumed to be impartial until the contrary is proven; a substantial burden is imposed on the affiant to challenge this presumption." 12 MOORE'S FEDERAL PRACTICE, § 63.20[8][b] (Matthew Bender 3d ed.). "[T]he motion should allege facts showing that a reasonable person would harbor doubts about the judge's impartiality." 12 MOORE'S FEDERAL PRACTICE, § 63.62[2] (Matthew Bender 3d ed.) citing Lindsey v. City of Beaufort, 911 F.Supp. 962, 967 n.4 (D.S.C. 1995). Analysis under Section 455 does not require the court to accept as true the factual allegations made by debtors. U.S. v. Balistreiri, 779 F.2d 1191, 1203 (7th Cir. 1985) cert. denied sub nom DiSalvo v. United States, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986); 12 MOORE'S FEDERAL PRACTICE, § 63.62[2] (Matthew Bender 3d ed.).

The analysis under subsections (a) and (b)(1) is largely the same. Subsection (a) paints with a larger brush to encompass circumstances where there may be no actual bias but merely an appearance thereof. Under subsection (a), "[t]he question is not whether the judge is impartial in fact, but whether a reasonable observer would perceive the judge to be impartial, even if the

result of the inquiry is disqualification of a judge who is not actually biased and who would strive to weigh the scales of justice equally between contending parties." 12 MOORE'S FEDERAL PRACTICE, § 63.20[5] (Matthew Bender 3d ed.).  However, "[t]he fact that the statute requires concern for appearances does not mean that it requires concern for mirages." Id.

> The standard for recusal is whether a reasonable person, with knowledge and understanding of all relevant facts, would conclude that the judge's impartiality might reasonably be questioned.  The court asks how things would appear to the well-informed, thoughtful, and objective observer, not the hypersensitive, cynical and suspicious person.

12 MOORE'S FEDERAL PRACTICE, § 63.20[4] (Matthew Bender 3d ed.).  See also O'Connor v. State of Nevada, 27 F.3d 357, 363-64 (9th Cir. 1994).

A limiting factor on both subsections at issue here is the extrajudicial source doctrine.  Liteky v. U.S., 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Liteky, 510 U.S. at 545 n.1. (Citation omitted).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [citation] In and of themselves ... they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved."

- 53 -

1   <u>Liteky</u>, 510 U.S. at 555; <u>In re Focus Media, Inc.</u>, 378 F.3d 916, 930
2   (9th Cir. 2004).  The Kincaids have not presented and the court is
3   not aware of an extrajudicial source affecting the court's rulings
4   and treatment of the Kincaids in this case.  No facts indicating an
5   extrajudicial source are alleged or proven by the Kincaids.  It
6   appears that the Kincaids have formed their belief based on rulings
7   made by the court during the course of this bankruptcy proceeding.
8   The Kincaids have alleged numerous times in their filings and in
9   hearings that the court unfairly denies their motions, that Judge
10  Holman has not been fair or neutral, that he is prejudiced or
11  biased against the Kincaids because E. Kincaid is Asian, and that
12  he has converted the bankruptcy court into an instrument of
13  oppression and injustice.  The Kincaids are understandably unhappy
14  that many of their motions for relief in this case have been
15  denied, but they have shown no extrajudicial source that affected
16  the court's rulings.

17      Nor have the Kincaids shown that the court's rulings "were
18  products of 'deep-seated favoritism or antagonism that [made] fair
19  judgment impossible.'"  <u>Focus Media</u>, 378 F.3d at 930 *citing* <u>Liteky</u>,
20  510 U.S. at 555.  When it has either denied the Kincaids' motions
21  or overruled their oppositions, the court has done so because it
22  found no legal merit to their arguments.  In many cases the
23  Kincaids' pleadings have contained the same arguments raised in
24  earlier filings and which were denied by the court.  These repeated
25  arguments are no more persuasive the second, third, and fourth time
26  than they were the first, but each time the court has taken care to
27  consider all of the Kincaids' arguments and to issue a written
28

- 54 -

1  ruling that attempted to set forth a clear and logical explanation

2  of the ruling, citing legal authority and the facts in the record.

3  Based on all of the facts and circumstances, the court finds

4  that no reasonable person could question the court's impartiality

5  in this case.  If no reasonable person could see an appearance of

6  partiality or bias, there is no evidence of actual bias.  "The

7  recusal statutes were not intended to allow a litigant to compel

8  disqualification simply on unfounded innuendo concerning the judges

9  possible partiality."  12 MOORE'S FEDERAL PRACTICE, § 63.20[8][b]

10  (Matthew Bender 3d ed.).

11  Considering the foregoing factors, the Kincaids have failed to

12  carry their burden of showing that Judge Holman's recusal is

13  warranted based on facts or events after April 7, 2006, and to the

14  extent that the motion seeks this relief, it fails.

15  The Request For Stay Pending Appeal

16  Turning to the request for a stay pending appeal, the court

17  notes initially that the Kincaids believe that a stay pending

18  appeal is necessary in this case in order to stop what they

19  perceive as ongoing, irreparable harms that they allege are visited

20  upon them by this court and the chapter 7 trustee, Susan Smith.  E.

21  Kincaid admitted at the hearing that the Kincaids requested a stay

22  pending appeal because they believe that such a stay would result

23  in a temporary granting of the Fourth Disqualification Motion,

24  which E. Kincaid asserts would prevent Judge Holman from performing

25  any function in this case until her appeal is resolved.  In other

26  words, the Kincaids appear to believe that if the stay pending

27  appeal were granted, the third bankruptcy case would simply come to

28

- 55 -

a halt until the appeal was decided.  The Kincaids are mistaken in

their belief.  The court's prior order was a denial of the

Kincaids' motion to reconsider, and a stay pending appeal will not

reverse the order and temporarily grant the Kincaids' motion.

Even though a stay pending appeal would not have the effect

that the Kincaids believe that it would have, they have

nevertheless moved for a stay pending appeal and the court

considers their request.  The Kincaids have cited no authority

supporting the motion, but the court construes the request for a

stay pending appeal to be grounded on Bankruptcy Rule 8005, which

gives the court discretion to issue a stay or any other appropriate

order during the pendency of an appeal on such terms as will

protect the rights of all parties in interest.  A request for a

discretionary stay under BR 8005 is analyzed like a preliminary

injunction.  The court must consider: (1) the likelihood of the

appellant's success on the merits; (2) irreparable harm to

appellant if no stay is granted; (3) substantial harm to the

appellee if a stay is granted; and (4) whether a stay will do harm

to the public interest.  <u>Wymer v. Wymer (In re Wymer)</u>, 5 B.R. 802,

806 (9th Cir. BAP 1980).  The party moving for a stay has the burden

on each of these elements, and the "'[m]ovant's failure to satisfy

one prong of the standard for granting a stay pending appeal dooms

the motion.'"  <u>In re Irwin</u>, 338 B.R. 839, 843 (Bank. E.D. Cal.

2006)(citing <u>In re Deep</u>, 288 B.R. 27, 30 (N.D.N.Y. 2003).  Under BR

8005, the bankruptcy court may require a bond or other appropriate

security.

First, the Kincaids have not shown that they are likely to

- 56 -

succeed on the merits of the appeal.  Their supporting statement that they "are likely to prevail if the judge is fair and neutral" does not convince the court that they are likely to succeed on the merits of their appeal.  Their declarations in support of this motion, as well as their re-submission as exhibits attached to this motion of their motion for removal of Smith, various declarations and exhibits previously filed with the court, and a page from the Homeward Street Journal (Dkt. 614 at 5-36; Dkt. 628 at 6-142) similarly do not show a likelihood of success on the merits.  The exhibits do not present any facts that the court has not previously considered and weighed or any arguments that the court has not previously considered and rejected.

Furthermore, contrary to the Kincaids' argument in their reply and E. Kincaid's argument at the hearing, the fact that the district court denied Smith's motion for a pre-filing review order in the Kincaids' appeal, Case No. Civ. S-06-1682, is not evidence that they are likely to succeed on the merits.  The district court's order, submitted with the Kincaids' reply (Dkt. 628 at 4) does not indicate that the motion was denied because the district court found the appeal to be meritorious.  The order simply states that the district court declined to exercise its discretion to enter a pre-filing review order, and that such orders should rarely issue.  It does not follow from these statements that the appeal is likely to succeed on its merits.

Second, the Kincaids have also not shown that they will suffer irreparable injury if a stay pending appeal is not granted.  Their claim that they have suffered irreparable injury in the past as a

result of alleged wrongdoing committed by Smith does not show that
the debtors will suffer irreparable harm if a stay of the order
denying the motion to reconsider the Fourth Holman Disqualification
Motion is not granted.  Similarly, the Kincaids' claim that Smith
will receive fees incurred through administration of the estate
does not show that they will suffer irreparable harm if a stay of
the order denying the motion to reconsider the Fourth Holman
Disqualification Motion is not granted.  Smith would not be
divested of her entitlement to administer the case or to seek
compensation even if a stay pending appeal were to be granted.  The
court could rule on Smith's requests made in the course of
administration of the case, and could award fees to Smith,
notwithstanding any stay pending appeal of the order denying the
motion to reconsider the Fourth Holman Disqualification Motion.

Third, the Kincaids have made no showing that no substantial
harm will come to the appellee.  However, insofar as the court has
already noted that a stay pending appeal of the order denying the
debtors' motion to reconsider would not affect Smith's continuing
ability to administer the third bankruptcy case, no substantial
harm would come to Smith if a stay pending appeal were granted.

Fourth and finally, the Kincaids have made no showing that the
requested stay will do no harm to the public interest.  Again,
insofar as the granting of a stay pending appeal of the court's
prior order would have no effect on Judge Holman's ability to
continue to preside over the case or Smith's ability to continue to
administer the estate, the public interest would be equally
unaffected.

1    The court also notes at this point that, if a stay pending

2    appeal did have the effect of temporarily granting the Kincaids'

3    motion, and the court were somehow to give to the Kincaids

4    temporarily all of the relief that they sought in the

5    disqualification motion, the chapter 7 trustee, the bankruptcy

6    estate and the public interest would suffer substantial prejudice.

7    The trustee would in such circumstances be unable to administer the

8    third bankruptcy estate, and all prior orders authorizing her to

9    perform her function in the third bankruptcy case would be vacated.

10   Any distribution to the creditors of the bankruptcy estate would be

11   significantly delayed, or eliminated by duplication of the

12   administration of the case.  The public interest in prompt

13   resolution of the bankruptcy case would be thwarted.

14   The Kincaids have failed to establish at least two elements of

15   the relevant test.  Accordingly, the Kincaids have failed to carry

16   their burden of showing entitlement to a stay pending appeal, and

17   to the extent that the motion seeks this relief, it fails.

18   Because a stay pending appeal is not warranted, the court need

19   not reach the issue of an appropriate bond or other security.

20

21                              CONCLUSION

22   For the above reasons, the motion is denied.  The court will

23   issue a separate order consistent with the foregoing decision.

24

25   Dated: JUN 1 1 2007

26

27   THOMAS C. HOLMAN
     UNITED STATES BANKRUPTCY JUDGE

28                              - 59 -

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| James M. Kincaid | James M. Kincaid | Susan K. Smith |
| Estrella A. Kincaid | Estrella A. Kincaid | 7485 Rush River Dr. |
| PO Box 584 | PO Box 163733 | #710-218 |
| Sacramento, CA 95814 | Sacramento, CA 95816 | Sacramento, CA 95831 |

Office of the U.S. Trustee
Robert T Matsui United
States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

J. Russell Cunningham
1830 15th St
Sacramento, CA 95814

DATED:  6/13/07          By: _____
                                        **Deputy Clerk**

EDC 3-070 (New 4/21/00)